LION RAISINS, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

Nos. 01–322C, 01–536 C.

United States Court of Federal Claims.

Aug. 20, 2003.

Brian C. Leighton, Clovis, CA, for plaintiff.

Brian L. Owsley, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. Michael Gurwitz, Department of Agriculture, of counsel.

## OPINION

MILLER, Judge.

After obtaining a decision that its suspension from bidding on government contracts was arbitrary and capricious, a supplier to the Government moved for attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (2002) (the "EAJA"). Defendant responds that the supplier has failed to satisfy the statutory criteria mandatory for an award under the EAJA. Argument is deemed unnecessary.

## FACTS

The details of the litigation giving rise to plaintiff's EAJA application are chronicled in *Lion Raisins, Inc. v. United States*, 51 Fed. Cl. 238 (2001) ("*Lion Raisins I* "), and *Lion Raisins, Inc. v. United States*, 52 Fed.Cl. 629 (2002) ("*Lion Raisins II* "). Only the facts germane to plaintiff's EAJA application will be repeated.

Lion Raisins, Inc. ("plaintiff"), grows, processes, and markets raisins and has completed more than 20 contracts awarded to it as a disadvantaged small business, *see* 15 U.S.C. § 637(a) (2002), by the United States Department of Agriculture (the "USDA") over the last decade. On November 22, 2000, the USDA issued an invitation for raisin handlers to bid on two contracts for school lunch programs: Invitation 923 and Invitation 924. After receiving plaintiff's bids, and without plaintiff's knowledge, the USDA requested a Certificate of Competency ("COC") from the Small Business Administration (the "SBA"). The request for the COC was spurred by an investigation conducted by the Agricultural Marketing Service (the "AMS"), the USDA's compliance office, that revealed that plaintiff had falsified certain raisin certifications. The USDA also had initiated a size protest against plaintiff after receiving numerous telephone calls from plaintiff's competitors insisting that plaintiff did not qualify as a small business.

Before the USDA awarded the contracts, and before the SBA determined plaintiff's competency, the USDA, on January 12, 2001, suspended plaintiff from bidding on government contracts for a period of one year. Dr. Kenneth C. Clayton, the AMS suspending official, identified the altered raisin certificates as the ground for the suspension, citing Federal Acquisition Regulation, 48 C.F.R. (FAR) § 9.407–2(a)(7) (2002).[1] Plaintiff filed suit in the United States District Court for the Eastern District of California (Fresno) to attempt to block the award of the two raisin contracts. In response to an order from the district court, plaintiff received a redacted

---

1. The regulation permits suspension of a contractor if there is adequate evidence of the commission of any offense "indicating a lack of business integrity or business honesty that seriously and directly affects the present responsibility" of the contractor. FAR § 9.407–2(a)(7).

copy of the USDA's investigation report. Plaintiff requested a hearing on the suspension, which took place on February 1, 2001, at the USDA's Washington, DC headquarters. Bruce A. Lion, plaintiff's Vice President, testified at the hearing; Dr. Clayton found his explanations for the falsified certificates unpersuasive and concluded, in a final decision dated February 5, 2001, that plaintiff could not show its present responsibility as a government contractor. During the hearing Dr. Clayton insisted that every reason supporting plaintiff's suspension could be found in the January 12, 2001 decision authorizing the suspension.

On March 28, 2001, the Fresno district court preliminarily enjoined the USDA from awarding to any other bidder a contract for which plaintiff submitted the lowest price. The USDA subsequently awarded plaintiff the contract covering Invitation 924.

Plaintiff then sued in the United States Court of Federal Claims on May 29, 2001, alleging breach of implied contract as to Invitation 923. After the district court dismissed plaintiff's action as to Invitation 924 for lack of jurisdiction, plaintiff re-filed that suit in the Court of Federal Claims on September 24, 2001, and the cases were consolidated on November 19, 2001. During this jurisdictional jockeying, the USDA reinstated plaintiff's suspension, arguing that the district court's stay of the suspension was rendered moot by that court's dismissal of plaintiff's suit.

On December 14, 2001, this court found that, as to Invitation 923, the USDA acted arbitrarily and capriciously in suspending plaintiff. *Lion Raisins I*, 51 Fed.Cl. at 249. During its defense of the USDA suspension in court, defendant proffered the declaration of Eric M. Forman, an AMS official subordinate to Dr. Clayton, that offered a new explanation for plaintiff's suspension. Mr. Forman explained that the Office of the Inspector General (the "OIG") had instituted a criminal investigation into plaintiff after the USDA's investigation and that it was standard practice for the AMS to refrain from taking administrative action until the resolution of a criminal inquiry. However, an impending large raisin contract rendered plaintiff's suspension urgent, so, after receiving

clearance from the OIG, the AMS implemented the one-year suspension.

The court did not question the truthfulness of Mr. Forman's explanation; rather, it could not consider his declaration when deciding plaintiff's motion for summary judgment because it presented a rationale that conflicted with Dr. Clayton's stated reasons for suspending plaintiff. *See Lion Raisins I*, 51 Fed.Cl. at 246 (considering the declaration "would transform an agency decision from a finite requirement that the agency articulate the basis for its action to a fluid defense that takes final form when an agency must answer in court"). The court instead reviewed the reasoning in Dr. Clayton's final decision, which, in essence, based plaintiff's suspension on the results of the USDA's investigation. The court found the suspension arbitrary and capricious because the USDA awarded plaintiff five contracts after concluding its investigation into plaintiff, but then abruptly reversed course and decided that plaintiff lacked the present responsibility required of government contractors. Given defendant's insistence that the Government may explain the actions of cognizant agency officials when a decision is questioned in court, the court emphasizes once again that no lacuna or lack of clarity in the record existed that would justify the Government's supplying a post-hoc explanation. *See CCL Serv. Corp. v. United States*, 48 Fed.Cl. 113, 118–19 (2000); *GraphicData, LLC v. United States*, 37 Fed. Cl. 771, 779–80 (1997).

On June 10, 2002, the court awarded plaintiff $1,005.95 in bid preparation and proposal costs, as authorized by the Tucker Act, 28 U.S.C. § 1491(b)(2) (2002). *See Lion Raisins II*, 52 Fed.Cl. at 637. The court denied the components of plaintiff's claim that requested attorneys' fees, overhead, and costs incurred in proceedings before the SBA. In reaching its decision, the court noted plaintiff's intent to file an application under the EAJA. *Id.* at 633 n. 5.

On October 28, 2002, plaintiff filed its application for attorneys' fees and costs under the EAJA. Defendant took the unusual step of moving for discovery regarding the EAJA application, which resulted in a contentious round of briefing. The court, by order of

November 22, 2002, granted defendant's motion. Defendant completed all depositions by March 13, 2003, and filed its opposition brief just over one month later. Plaintiff underscores the painstaking detail of defendant's opposition, claiming that defendant "rais[ed] at least 23 distinct attacks, cit[ed] at least 69 cases, and fil[ed] a 47 page brief ..." in response to plaintiff's EAJA application. Pl.'s Br. filed May 22, 2003, at 2. After both parties were afforded the opportunity to file additional materials, the court terminated briefing on June 3, 2003.

## DISCUSSION

The court previously encouraged the parties to settle a claim for the attorneys' fees and costs that plaintiff incurred in prosecuting the underlying bid protest, noting that it did not appear that plaintiff would have difficulty establishing entitlement on the merits to an award under the EAJA. *See Lion Raisins II*, 52 Fed.Cl. at 633 n. 5. Unfortunately, the parties were unmoved by the court's request and the Supreme Court's admonition that a "request for attorney's fees ... not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Plaintiff's EAJA application claims attorneys' fees and costs incurred in the pre-litigation administrative actions and the proceedings in the federal district court and the Court of Federal Claims, including the EAJA application itself. Defendant filed a rancorous opposition to plaintiff's application, which nonetheless legitimately contested plaintiff's satisfaction of the statutory requirements for an award under the EAJA. The court addresses each of defendant's arguments, in turn.

The EAJA sets forth a cause of action for fees and costs: The court "shall award to a prevailing party other than the United States fees and other expenses ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). As set forth by the

Supreme Court, four factors govern eligibility to recover under the EAJA: 1) The claimant must be a "prevailing party"[2] 2) the Government's position must not be "substantially justified," 3) no special circumstances render the grant of an award unjust, and 4) the fee application must be submitted within 30 days of final judgment and supported by an itemized statement. 28 U.S.C. § 2412(d)(1)(A)-(B); *Commissioner, INS v. Jean*, 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). "As a waiver of sovereign immunity, the EAJA is interpreted narrowly. But this is not a talisman for permitting the government to avoid liability in all cases." *Massie v. United States*, 226 F.3d 1318, 1321 (Fed.Cir.2000).

### 1. *Prevailing party*

Defendant does not contest that plaintiff prevailed in the underlying litigation on the merits. However, it protests vigorously that plaintiff fails to meet the statutory criteria that define a "party" for EAJA purposes. Under 28 U.S.C. § 2412(d)(2)(B)(ii), a party includes an "organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed."

#### 1) *Net worth*

Defendant challenges the adequacy of plaintiff's documentation of its net worth. In support of its EAJA application, plaintiff submitted the declaration, dated January 14, 2002, of Bruce Lion, plaintiff's Vice President. The declaration recites that plaintiff's "net worth did not exceed seven million dollars, and did not even exceed four million dollars, according to the book value determined by [plaintiff's] certified public accountant." Decl. of Bruce A. Lion, Jan. 14, 2002, ¶ 2 ("Lion Decl."). Plaintiff provided no documentation with its EAJA application to support this assessment of its net worth.

2. A "prevailing party" must demonstrate that it is eligible to receive an award of attorneys' fees. Pursuant to section 2412(d)(2)(B) of the EAJA, an "eligible" party includes, *inter alia*, a corporation "the net worth of which did not exceed

$7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed ...." 28 U.S.C. § 2412(d)(2)(B).

Defendant labeled this declaration "a self-serving conclusory narrative affidavit," Def.'s Br. filed Apr. 14, 2003, at 17, and cited the deposition testimony of Mr. Lion and his subordinates, which, according to defendant, undermined Mr. Lion's statement regarding plaintiff's net worth. Additionally, defendant insists that plaintiff is an affiliate of both Lion Brothers Farms and Lion Racing, and, consequently, that the net worth of these entities should be included when determining plaintiff's net worth. Defendant cites *National Truck Equipment Association v. National Highway Traffic Safety Administration*, 972 F.2d 669 (6th Cir.1992), for the proposition that the net worth of plaintiff's "affiliated entities may be aggregated toward the net worth" requirement of the EAJA. Def.'s Br. filed Apr. 14, 2003, at 18.

Turning first to the issue of aggregation, the EAJA does not expressly state whether the net worth of plaintiff's related corporate entities should be factored into plaintiff's net worth. In *National Truck* plaintiff, a trade organization representing over 1,000 truck parts manufacturers, brought an action for judicial review of regulations issued by the National Highway Traffic Safety Administration (the "NHTSA"). The Sixth Circuit remanded to the NHTSA to correct various defects in the regulations' compliance procedures. Plaintiff then moved for attorneys' fees and costs under the EAJA, which the special master granted, in part. In finding that plaintiff satisfied the net worth requirement, the special master declined to aggregate the net worth of the association's members; aggregation would have caused plaintiff to exceed the $7 million dollar cap. Instead, the special master considered only plaintiff's individual net worth.

The Sixth Circuit adopted the following statement as its guidepost in deciding the issue of aggregation: "'EAJA awards should be available where the burden of attorneys' fees would have deterred the litigation challenging the government's actions, but not where no such deterrence exists.'" 972 F.2d at 672 (quoting *SEC v. Comserv Corp.*, 908 F.2d 1407, 1415–16 (8th Cir.1990)). The court looked to the Model Rules designed to implement the EAJA[3] and the EAJA's legislative history and determined that, when a trade association sues on behalf of its members, and those members "derived significant benefits" from the litigation, it is appropriate to aggregate the net worth of the members when resolving EAJA eligibility.[4] *Id.* at 673. Finding that the association's members derived significant benefits from the underlying litigation, the court reversed the award of EAJA fees and costs because the net worth of the members and plaintiff exceeded the $7 million ceiling. *Id.*

Since its decision in *National Truck*, the Sixth Circuit has clarified the scope of its holding as applied to related corporate entities. In *Caremore, Inc. v. NLRB*, 150 F.3d 628 (6th Cir.1998), the Sixth Circuit affirmed plaintiff's entitlement to an EAJA award. Plaintiff was owned by an individual "who also control[led] several other nursing homes through his ownership of a common corporate parent." *Id.* at 630. Acknowledging its holding in *National Truck*, the panel nevertheless declined to aggregate the net worth of the related corporate entities because plaintiff "clearly was litigating on its own behalf; the record demonstrates that it is a separately incorporated entity, and that the merits of the underlying case involved a bargaining unit consisting solely of [plaintiff's] employees." *Id.* Because the court had "no reason to believe that [plaintiff] was litigating on behalf of any other entity," it "therefore decline[d] to aggregate the net worth ... of any affiliated entities for purposes of deter-

---

3. The Model Rules of the Administrative Conference of the United States were promulgated pursuant to 5 U.S.C. § 504 (2002), in 1981 to govern EAJA awards in administrative agency actions. Model Rule 0.104(f) states that the net worth of plaintiff and its affiliates "shall be aggregated to determine eligibility." *See National Truck*, 972 F.2d at 672.

4. The court also found that the exemption of certain tax-exempt organizations from the statute's net worth criteria evidenced an intention by Congress to exclude only certain types of organizations from an aggregation requirement. *National Truck*, 972 F.2d at 673; *see also* 28 U.S.C. § 2412(d)(2)(B)(ii) ("[A]n organization described in section 501(c)(3) of the Internal Revenue Code ... may be a party regardless of the net worth of such organization.").

mining [plaintiff's] eligibility for fees and costs. *See* [*National Truck*, 972 F.2d at 673] ('when a proceeding involves [an entity] independent of its [affiliates], the [entity's] eligibility should be measured individually')." *Caremore*, 150 F.3d at 630.

Thus, defendant's characterization of the Sixth Circuit's jurisprudence on net worth gives an incomplete assessment: That court has developed a flexible approach to aggregation, deeming it appropriate only when the underlying litigation bestowed significant benefits on entities other than the EAJA claimant. Defendant also fails to mention that other circuits have taken a far less permissive stance towards aggregation. For example, the Ninth Circuit has adopted a type of standing analysis when deciding EAJA eligibility, deeming the net worth of plaintiff association's members material only if the members "were liable for the [plaintiff's association's] attorney's fees;" if not, and even if the members benefitted from the litigation, the EAJA does not require aggregation. *Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir.1991).[5]

In *National Association of Manufacturers v. Department of Labor*, 159 F.3d 597 (D.C.Cir.1998), the D.C. Circuit questioned the Sixth Circuit's analysis of the net worth requirement, concluding instead that the plain language of the statute counseled against aggregating the net worth of plaintiff association's members: "[T]he government's argument . . . conflicts with the plain language of the statute, which expressly lists as eligible for fees any '*association* . . . the net worth *of which* did not exceed $7,000,000 . . .'" *Id.* at 600 (quoting 28 U.S.C. § 2412(d)(2)(B)(ii)). The Fifth Circuit reached a similar conclusion: The "language [of the EAJA] is clear and unambiguous. . . . [I]t imposes a ceiling only on the net worth and size of the association itself. . . . We are

unpersuaded, moreover, that EAJA's special eligibility rule for agricultural cooperatives and non-profit organizations is evidence of an implicit aggregation rule." *Texas Food Indus. Ass'n v. USDA*, 81 F.3d 578, 581 (5th Cir.1996).

With the guidance provided by the appellate courts, this court holds that the net worth of Lion Racing and Lion Brothers Farms is irrelevant to plaintiff's EAJA eligibility. The jurisprudence makes clear that aggregation, if required at all, is necessary only when the underlying litigation pursued by the EAJA claimant substantially benefitted another party, or if the claimant was not the real party in interest to the underlying litigation. This is not the situation in the case at bar. Plaintiff filed the declaration, dated February 10, 2003, of Susan E. Keller, plaintiff's controller, in response to the order that plaintiff produce additional documentation regarding its net worth and number of employees. *See* Order entered Mar. 4, 2003. Ms. Keller states that, although certain members of the Lion family have ownership interests in more than one of the companies,[6] each company has its own set of books, tax returns, insurance policies, workers compensation policies, and bank accounts, "and at no point are combined for any type of reporting internally or externally." Decl. of Susan E. Keller, Feb. 10, 2003, ¶ 5.

Most important to the issue of aggregation, only plaintiff had a direct interest in the underlying lawsuit. While Lion Racing and Lion Brothers Farms may profit from plaintiff's ability to perform government contracts, even the more restrictive formulations of EAJA eligibility would not require aggregation for this type of attenuated benefit from the underlying litigation. *See Caremore*, 150 F.3d at 630; *Love*, 924 F.2d at 1494; *Wall*, 15 Cl.Ct. at 803–04.

**5.** The Federal Circuit appears to have endorsed the use of a real-party-in-interest analysis when determining the identity of the prevailing party under the EAJA. *Phillips v. GSA*, 924 F.2d 1577, 1583 n. 5 (Fed.Cir.1991); *Wall Indus. v. United States*, 15 Cl.Ct. 796, 803–04 (1988), *aff'd*, 883 F.2d 1027 (Fed.Cir.1989) (unpubl.). This court looks to other circuits for assistance in determining plaintiff's EAJA eligibility, as neither the facts of *Phillips* nor *Wall* required that the Federal

Circuit consider the question of net worth aggregation.

**6.** Al Lion, Jr., has an ownership stake in plaintiff and a minority interest in Lion Brothers Farms. *See* Decl. of Susan E. Keller, Feb. 10, 2003, ¶¶ 2–3, 5. Jeff Lion wholly owns Lion Racing and has an ownership interest in Lion Brothers Farms. *Id.* ¶¶ 3–4.

The court next determines whether plaintiff exceeds the net worth ceiling of $7 million. "Net worth, for the purposes of the EAJA, is calculated by subtracting total liabilities from total assets." *Scherr Constr. Co. v. United States*, 26 Cl.Ct. 248, 251 (1992) (citing *City of Brunswick v. United States*, 849 F.2d 501, 503 (11th Cir.1988)). Plaintiff directs the court to documentation that, it claims, suffices to show its net worth on the appropriate dates. Plaintiff first showcases its 2001 tax return, which lists its retained earnings as $3,169,362.00 at the beginning of the tax year and as $3,256,051.00 at the end of the tax year. Although this document does not give plaintiff's precise net worth on either May 29 or September 24, 2001, plaintiff argues that " 'retained earnings' ... is the same as net worth,' " so the court should deem the 2001 tax return a sufficient basis on which to stake a net worth determination. Pl.'s Br. filed May 22, 2003, at 11. Plaintiff cites no accounting or judicial authority for this proposition, and the court does not credit it.

Plaintiff also supplied three "Detail Balance Sheets" that purport to show, respectively, plaintiff's assets, liabilities, and equity as of December 31, 2000; December 31, 2001; and October 31, 2002. The total equity figure in each of these balance sheets is less than $7 million. The balance sheets do not include supporting documentation of any type. In his declaration Mr. Lion maintains that plaintiff's "certified public accountant can provide ... [the] corroborating evidence" of plaintiff's net worth that is lacking in plaintiff's documentation. Lion Decl. ¶ 2. However, testimony from plaintiff's certified public accountant, Nomie Derderian, and plaintiff's controller, Ms. Keller, calls into question the reliability of the figures in the balance sheets. Mr. Derderian testified by deposition that he did not prepare the balance sheets and that they would not conform with generally accepted accounting principles. Dep. of Nomie Derderian, Mar. 11, 2003, at 17, 19–21 ("Derderian Dep."). " 'The failure to submit information consistent with generally accepted accounting principles is fatal to plaintiff's application.' " *Fields v. United States*, 29 Fed.Cl. 376, 383 (1993)

(quoting *Scherr*, 26 Cl.Ct. at 251), *aff'd*, 64 F.3d 676 (Fed.Cir.1995) (unpubl.).

Ms. Keller did assist in the preparation of the balance sheets, but admitted that a financial audit would be required to verify their accuracy. Dep. of Susan E. Keller, Mar. 11, 2003, at 28, 35, 47–48 ("Keller Dep."). Neither Mr. Derderian nor Ms. Keller could supply a calculation of plaintiff's total net worth as of either May 29, 2001, or September 24, 2001. Derderian Dep. at 35; Keller Dep. at 39–40.

Plaintiff has failed to submit documentation sufficient to establish its net worth as of May 29, 2001 or September 24, 2001. Plaintiff makes the bold claim that, because it supplied net worth figures below the $7 million ceiling in its "verified answers to interrogatories," *see* Pl.'s Br. filed May 22, 2003, at 11, it has satisfied the net worth criterion. Plaintiff cites no authority for this proposition, and the court notes that these "verified answers" supply no more support for the net worth figures than do plaintiff's balance sheets and tax returns.

Because plaintiff has failed to satisfy one of the statutory requirements for an EAJA award, it is not eligible to recover attorneys' fees and costs. *Missouri Pac. Truck Lines, Inc. v. United States*, 746 F.2d 796, 797–98 (Fed.Cir.1984). However, in the interest of giving full consideration to plaintiff's application, the court will examine plaintiff's showings under the remaining factors that govern an EAJA award.

### 2) *Number of employees*

The EAJA also requires that an eligible party, if a corporation, employ fewer than 500 people as of the date the civil action was filed. *See* 28 U.S.C. § 2412(d)(2)(B)(ii). To qualify as a prevailing party, plaintiff must satisfy the eligibility requirements of both net worth and number of employees. *See Missouri Pac.*, 746 F.2d at 797 ("The legislative history [of the EAJA] shows that Congress intended the 500 employees limit to be an additional eligibility requirement for corporations.").

In his declaration Mr. Lion asserted that plaintiff had fewer than 500 employees at the

time it filed its actions in the Court of Federal Claims. Lion Decl. ¶ 2. Mr. Lion clarified during his deposition that plaintiff employs approximately 300 employees. Dep. of Bruce A. Lion, Mar. 13, 2003, at 19–20 ("Lion Dep."). He obtained this figure from a size determination performed by the SBA. *Id.* at 20–21. The results of the size determination, according to a January 17, 2001 letter to plaintiff from the SBA's Office of Government Contracting, were that plaintiff and Lion Brothers Farms collectively employed fewer than 500 people.

Defendant labels the SBA size determination as misleading because it does not reflect the actual number of plaintiff's employees. Mr. Lion's understanding of the size determination fuels this objection. According to Mr. Lion, the SBA does not count the actual number of employees when making a size determination; rather, the process entails "some kind of averaging," whereby the number of total worked hours is divided by the number of hours worked annually by an average employee. *Id.* at 79. Ms. Keller confirmed in her deposition that, if the total hours worked during the year was divided by 2,080, *i.e.*, the "base hours" worked by an average employee, "your average comes out to right at 250 [employees]." Keller Dep. at 18.

The SBA's size determination process does not calculate the total number of employees. 13 C.F.R. § 121.106 (2002), provides that "[w]here the size standard is number of employees," the "average number of employees of the concern is used (including the employees of its domestic and foreign affiliates) based upon numbers of employees for each of the pay periods for the preceding completed 12 calendar months." § 121.106(b)(1).

The issue of plaintiff's eligibility is complicated further by the presence of seasonal

workers. Ms. Keller testified that, during harvesting season, an additional 200 employees are added to plaintiff's workforce. Keller Dep. at 17. Although the seasonal employees may work for as short a period as one day, their presence accounted for the fact that, in 2001, plaintiff processed a total of 1,300 W–2 tax forms. *Id.* at 17–18.

The case law offers little guidance on point. The D.C. Circuit, while recognizing "that not all those who labor on behalf of an entity are its 'employees,'" upheld the district court's determination that a church had 7,000 employees because of deposition testimony indicating that the workers held no other employment and labored in a "typical" employer-employee relationship. *Unification Church v. INS,* 762 F.2d 1077, 1092 (D.C.Cir. 1985). The legislative history of the EAJA also offers no clear guidance as to the applicable definition of employee.[7] The SBA's size determination, as the product of averaging, is a proxy. The EAJA requires plaintiff to make a showing on a specific date, and with that stricture in play, the court finds that plaintiff has failed to make the requisite showing.

### 2. *Substantial justification*

The Government bears the burden of showing that its position was substantially justified in the underlying litigation. *Scarborough v. Principi,* 319 F.3d 1346, 1354 (Fed.Cir.2003). The "position" of the Government "means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based . . . ." 28 U.S.C. § 2412(d)(2)(D). Therefore, a court must review "the government's position throughout the dispute, including not only its litigating position but also the agency's ad-

---

**7.** Although Congress did not define employee specifically within the context of the EAJA, the legislative history did include one limited reference. *Oversight Hearing to Extend the Authorization of the Equal Access to Justice Act, S. 919: Hearing Before the Subcomm. on the Admin. Practice and Procedure of the Senate Comm. on the Judiciary,* 98th Cong. 62 (1983) (statement of David O. Stewart, Attorney, and the Small Business Legal Defense Committee, "Equal Access to Justice Act: An Attorney's Handbook"). The

Senate testimony cited Department of Justice policy indicating that Justice applies the common law definition of employee, which includes "all persons who regularly perform services for remuneration for the applicant, under the applicant's direction and control." U.S. Department of Justice, Office of Legal Policy, Award of Attorney Fees and Other Expenses in Judicial Proceedings Under the Equal Access to Justice Act 24 (1985).

ministrative position." *Doty v. United States,* 71 F.3d 384, 386 (Fed.Cir.1995) (citing *Gavette v. OPM,* 808 F.2d 1456, 1467 (Fed. Cir.1986) (en banc)). As the Supreme Court has emphasized, whether the Government's position lacks substantial justification is a "single finding" that "operates as a one-time threshold for fee eligibility." *Jean,* 496 U.S. at 160, 110 S.Ct. 2316. "This quintessentially discretionary inquiry ... necessarily involves the determination of facts and the application of the substantially justified standard of the EAJA to those facts." *Stillwell v. Brown,* 46 F.3d 1111, 1113 (Fed.Cir.1995) (internal quotation marks and citations omitted); *see also Clemmons v. West,* 206 F.3d 1401, 1404 (Fed. Cir.2000) (ruling that Federal Circuit was "precluded" from reviewing challenge to trial court's factual determination that Government's position was substantially justified).

The phrase "substantially justified" means " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citations omitted). Thus, the trial court must "look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu v. United States,* 948 F.2d 711, 715 (Fed.Cir.1991) (footnote omitted); *see also TGS Int'l. Inc. v. United States,* 983 F.2d 229, 229–30 (Fed.Cir.1993). While the court's decision on the merits may be relevant to the resolution of the substantial justification inquiry, *F.J. Vollmer Co. v. Magaw,* 102 F.3d 591, 595 (D.C.Cir.1996), neither the outcome of the underlying action nor the court's previous characterization of the Government's position is dispositive on the issue of substantial justification. *RAMCOR Servs. Group, Inc. v. United States,* 185 F.3d 1286, 1290 (Fed.Cir.1999).

In arguing its position was justified in the underlying litigation, defendant focuses only on its position before this court "that competing governmental interests may warrant a delay in suspending a contractor." Def.'s Br. filed Apr. 14, 2003, at 24. It maintains that the declaration submitted by Mr. Forman

established that the ongoing criminal investigation played a critical role in the decision to suspend plaintiff and that the USDA took action once it received the necessary clearance. The court in *Lion Raisins I,* according to defendant, "did not disagree with these arguments," but, instead, refused to consider them because they conflicted with Dr. Clayton's rationale for suspending plaintiff. *Id.* at 25 (citing *Lion Raisins I,* 51 Fed.Cl. at 248).

Plaintiff, correctly, focuses on the Government's position both at the administrative level and during the litigation. Plaintiff maintains that the Government's position was not substantially justified, and the court agrees. The case most similar to the facts at hand is *Chiu,* 948 F.2d 711. Plaintiff in *Chiu* successfully sued for back pay and benefits after the reason given for his termination was found to be pretextual. *Id.* at 712–13. Although agency officials, when approving plaintiff's termination, ostensibly believed that plaintiff's position was being legitimately eliminated, it became apparent during the ensuing litigation that plaintiff's supervisor fabricated that rationale to disguise his improper motivation for recommending plaintiff's termination. *Id.* at 716. After prevailing in the underlying litigation, plaintiff sued for attorneys' fees under the EAJA, which the Claims Court granted. *Id.* at 713.

The Federal Circuit affirmed plaintiff's entitlement,[8] ruling that the trial court had correctly looked "at the entirety of the [G]overnment's conduct [when making] a judgment call whether the [G]overnment's overall position had a reasonable basis in both law and fact." 948 F.2d at 715. The trial court had assumed that the Government's position in the Claims Court was reasonable, but found that the lack of substantial justification for the termination recommendation "outweighed any reasonable positions taken thereafter." *Id.* The appeals court upheld the Claims Court's exercise of discretion in reaching this conclusion. *Id.* at 716. The substantial justification inquiry, as recognized by the Supreme Court, "is quintessentially discretionary in nature," and comparing the Government's positions at the agency and

---

8. The court remanded for the determination of quantum. 948 F.2d at 722.

the litigation levels "necessarily involves an apples to oranges comparison." *Id.* at 715 n. 4.

In assessing whether the Government's position was substantially justified, this court confronts a situation similar to the trial court in *Chiu.* The USDA proffered a rationale for plaintiff's suspension (lack of business integrity) and maintained that this reason constituted the sole basis for plaintiff's dismissal. When the case proceeded to litigation, the Government attempted to supplement the record with a declaration that introduced another factor in the decision to suspend plaintiff (the criminal investigation).[9] The court refused to consider the declaration and, hence, the new explanation for plaintiff's suspension, because the administrative record was complete, as the agency represented, and therefore not eligible for supplementation. The court agrees with plaintiff that the USDA's actions, *i.e.,* the suspension of plaintiff for a present lack of business integrity, lacked substantial justification. The fact that plaintiff was awarded five contracts during the one and one-half years prior to its suspension and the fact that the USDA was required to make an affirmative finding of plaintiff's responsibility before awarding each of those contracts [10] belie a finding that Dr. Clayton's grounds for suspension were substantially justified.

Turning next to the underlying litigation, defendant has failed to show the reasonableness of its position before this court. As stated in *Lion Raisins I,* the court does not disagree with the proposition that " '[t]here may be circumstances where substantial Government interests would be prejudiced even by a disclosure of enough facts to show "adequate evidence" for the suspension.' " 51 Fed.Cl. at 248 (quoting *Horne Bros., Inc. v. Laird,* 463 F.2d 1268, 1272 (D.C.Cir.1972)).

Defendant seized on this legal principle during the EAJA briefing, attempting to justify its actions during the litigation by claiming that the Forman declaration "established that the ongoing criminal investigation played a critical factor in delaying [plaintiff's] suspension." Def.'s Br. filed Apr. 14, 2003, at 23. Plaintiff learned of the criminal investigation in October 2000, when its records were subpoenaed. *Lion Raisins I,* 51 Fed. Cl. at 248–49. If the criminal investigation was a "critical factor" in the decision to suspend plaintiff, and plaintiff knew of the investigation before the USDA implemented its suspension, defendant has provided the court no plausible explanation why the USDA was justified in not putting forth the existence of the investigation as its real reason, or even a major reason, for plaintiff's suspension. The Federal Circuit recently ruled that a factual matter in the public domain enjoys no protection from disclosure. *See R & W Flammann GmbH v. United States,* 339 F.3d 1320, 1323, 2003 WL 21804843, *2 (Fed.Cir.2003).

Defendant has failed to show why, as in *Chiu,* the Government did not reveal the true basis for the administrative action until the litigation, and the court does not accept that such a *volte face* legitimates the Government's position. Accordingly, the court finds and concludes that the Government's position was not substantially justified in the merits litigation.

### 3. *Special circumstances*

A prevailing party will be entitled to EAJA fees and costs "unless the court finds . . . that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Defendant raises two contentions that it claims disqualify plaintiff from an EAJA award: the "novel legal issues" involved in the underlying litigation and plaintiff's alleged falsifica-

---

**9.** Defendant, attempting to prove that the Forman declaration did not present a new reason for plaintiff's suspension, argues that Dr. Clayton, in his February 5, 2001 final decision, "also expressed concern that an earlier suspension of [plaintiff] could hinder the ongoing criminal investigation." Def.'s Br. filed Apr. 14, 2003, at 23. Defendant cites to a sentence in the decision that reads, "Although the AMS Compliance Office's preliminary investigation report was completed in May 1999, that did not signify the

completion of *all* of the federal government's investigatory activities." This sentence makes no mention of the criminal investigation and did not foreshadow the rationale contained in the Forman declaration for plaintiff's suspension.

**10.** FAR § 9.103(b) requires a contracting officer to make an affirmative determination of a contractor's responsibility before awarding it a contract.

tion of certain raisin certificates. Def.'s Br. filed Apr. 14, 2003, at 28.

"The EAJA does not establish criteria to determine what special circumstances would make an award unjust." *Skip Kirchdorfer, Inc. v. United States,* 35 Fed.Cl. 742, 748 (1996). The statute does allow a reduction in an EAJA award if the party seeking costs and fees unduly protracted the litigation, 28 U.S.C. § 2412(d)(1)(C), and defendant in the case at bar does not contend that plaintiff has prolonged its lawsuit (although both parties protracted briefing in plaintiff's EAJA application).

As noted by the D.C. Circuit, the "theme of 'unclean hands' pervades the jurisprudence of 'special circumstances.'" *Air Transp. Ass'n of Canada v. FAA,* 156 F.3d 1329, 1333 (D.C.Cir.1998). The notion that the court should entertain equitable concerns when reviewing the issue of special circumstances is in accord with the EAJA's legislative history:

> This "safety valve" helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made.

*Devine v. Sutermeister,* 733 F.2d 892, 895–96 (Fed.Cir.1984) (quoting H.R.Rep. No. 96–1418, at 11 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4990).

Defendant first contends that the "USDA's suspension of [plaintiff] based upon the May 1999 report concerning [plaintiff's] falsification of USDA documents presented novel issues of fact and law." Def.'s Br. filed Apr. 14, 2003, at 28. Defendant fails to illuminate the novelty about its position in the underlying litigation. The USDA gave one rationale for plaintiff's suspension, which the court found was arbitrary and capricious. The Government then offered another reason to support plaintiff's suspension, which amounted to an attempt to augment an admittedly complete administrative record. The Forman declaration and the Government's sponsorship of it did not present unique legal issues; rather, the USDA's rationale presented a plausible explanation, but one that cannot supplant the reason relied on by the USDA because plaintiff already was aware of the putatively secret investigation.

Defendant also insists that plaintiff's alleged falsification of a few raisin certificates should weigh against awarding plaintiff any attorneys' fees or costs, citing *U.S. Dep't of Labor v. Rapid Robert's, Inc.,* 130 F.3d 345 (8th Cir.1998). This contention is without merit. The USDA awarded plaintiff five contracts after concluding its investigation into plaintiff. For the Government to seize on the alleged falsification now as a reason to avoid paying EAJA fees and costs smacks of opportunism.

Defendant's reliance on *Rapid Robert's* also undermines its argument. The Eighth Circuit in *Rapid Robert's* reversed the district court's award of EAJA fees to plaintiff. 130 F.3d at 346. In the underlying litigation, the district court relieved plaintiff from penalties assessed by the administrative law judge (the "ALJ") because the Department of Labor, in promulgating interim regulations that governed the dispute, had failed to conform with the notice and comment provisions of the Administrative Procedure Act (the "APA"). *Id.* at 346–47. However, a review of the ALJ's decision revealed that plaintiff had committed multiple substantive violations of the statute. *Id.* at 349. While the district court justified its award of EAJA fees exclusively on the Department of Labor's failure to comply with the APA, the appeals court found that the district court's invalidation of the regulations allowed plaintiff to "reap[ ] a windfall by escaping its duty to pay for clear violations of a valid statute." *Id.* Citing the special circumstances exception in the EAJA statute, the court reversed the district court's award. *Id.*

Defendant cannot analogize plaintiff's actions in the case at bar to the situation in *Rapid Robert's.* In *Lion Raisins I,* the court found that Dr. Clayton's determination that plaintiff had violated FAR § 9.407–2(a)(7) was arbitrary and capricious. 51 Fed. Cl. at 247–48. Unlike in *Rapid Robert's,* plaintiff committed no substantive violation

of a governing statute or regulation. As the Eighth Circuit's decision makes clear, the special circumstances safeguard in the EAJA allows a reviewing court to prevent a prevailing party from profiting on a legal technicality—something that this plaintiff did not do.

### 4. *Amount of award*

The court now proceeds to determine the amount of attorneys' fees and costs to which plaintiff would be entitled if it had established its eligibility for an EAJA award.

#### 1) *Fees*

Defendant raises several factors which, it counsels, would warrant a reduction in the amount of fees claimed by plaintiff. First, it argues that plaintiff is ineligible to recover fees incurred in actions in other fora. Specifically, defendant disputes expenses incurred from the district court litigation, the SBA's COC determination, and the protest before the General Accounting Office (the "GAO").

With respect to the district court litigation, defendant cites 28 U.S.C. § 2412(d)(1)(A), authorizing the court to award fees and costs to a prevailing party "in any civil action ... brought by or against the United States in any court having jurisdiction of that action." The Federal Circuit recently clarified the import of this phrase, concluding that its plain meaning requires that the EAJA "extend only to fees and other expenses incurred before a court ... having the power to hear and decide the underlying civil action in which the EAJA applicant incurred those fees and other expenses." *Burkhardt v. Gober*, 232 F.3d 1363, 1367 (Fed.Cir.2001); *see also UNR Indus., Inc. v. United States*, 962 F.2d 1013 (Fed.Cir.1992), *aff'd sub nom. Keene Corp. v. United States*, 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (Court of Federal Claims may not award damages to plaintiff when court has no jurisdiction over plaintiff's action).

Plaintiff does not deny that the district court dismissed plaintiff's action for lack of jurisdiction. Decl. of Brian C. Leighton, Jan. 17, 2002, ¶ 3. However, perhaps recognizing that *Burkhardt* would prohibit recovery of the fees incurred when pursuing the bid protest in the district court, plaintiff argues that *California Marine Cleaning, Inc. v. United States*, 43 Fed.Cl. 724 (1999), allows plaintiff to recover some of the fees billed by its attorneys in the district court litigation. In *California Marine* the Court of Federal Claims acknowledged that the EAJA permits recovery for fees incurred in preparing to file suit in this court, *id.* at 731 (citing *Oliveira v. United States*, 827 F.2d 735, 744 (Fed.Cir. 1987)), and " 'fees for legal and factual research preparatory to Claims Court litigation,' " *id.* (quoting *Levernier Constr., Inc. v. United States*, 947 F.2d 497, 501 (Fed.Cir. 1991)). Thus, plaintiff claims that, of the 11 time entries that defendant cites as including activities performed for the district court litigation, the fees for six of these entries properly are recoverable because they "would have been expended if the action was brought initially in the Court of Federal Claims." Pl.'s Br. filed May 22, 2003, at 17.

Plaintiff's argument is unsustainable. Although some of the motions filed in the district court also would have been lodged with the Court of Federal Claims, the court is unable—and has no obligation—to compare the time entries from the district court litigation with the docket sheet in the Court of Federal Claims litigation in order to determine which filings overlapped. *Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 405 (Fed.Cir.1987). Moreover, the Federal Circuit's pointed statement in *Oliveira* that "expenses of an attorney that are not incurred or expended solely or exclusively in connection with the case before the court ... cannot be awarded under the EAJA," 827 F.2d at 744, prohibits the court from awarding fees in proceedings that take place in other fora. Finally, although some of the entries also include activities that arguably do not concern the district court litigation, the court is unable to calculate the time devoted to these activities, as plaintiff's attorneys grouped all activities performed for plaintiff under a single, daily time entry. The court is not required to reconstruct plaintiff's attorneys' time records into recoverable versus non-recoverable groupings. *Naporano*, 825 F.2d at 405. Accordingly, plaintiff would not recover fees billed by its

attorneys for actions identified by defendant as relating to the district court action.[11]

Defendant also contends that plaintiff may not recover fees incurred in its protest before the GAO or those associated with the USDA's request for a COC from the SBA. Plaintiff concedes that "the EAJA fee cases and statute[ ] do not allow reimbursement for the GAO contest." Pl.'s Br. filed May 22, 2003, at 18–19; *see also California Marine*, 43 Fed.Cl. at 731 ("Attorney fees and expenses incurred in litigation before the GAO thus may not be recovered under the EAJA.").[12] It argues, however, that the fees incurred during the SBA proceedings are recoverable because the "USDA directed the SBA to get involved preparatory to the USDA's suspension of [plaintiff];" thus, the request for the COC was "part of the same agency action." Pl.'s Br. filed May 22, 2003, at 17.

The court accepts plaintiff's argument. The USDA requested the COC for plaintiff because the AMS just had completed its preliminary investigation, which revealed that plaintiff had falsified certain raisin certificates. *Lion Raisins I*, 51 Fed.Cl. at 240. The AMS investigation precipitated plaintiff's suspension, the event that led to the litigation in the Court of Federal Claims. The Federal Circuit has concluded that EAJA fees and costs may be awarded only when expended "in connection with the case before the court." *Oliveira*, 827 F.2d at 744. As the COC request resulted from the same investigation which led to plaintiff's suspension, plaintiff could recover attorneys' fees relating to the request by the USDA for the COC.[13]

Although plaintiff could recover attorneys' fees relating to the COC determination, it could not recover those expended in the district court litigation or the action before the GAO. Some of the time entries encompassing tasks performed in the district court and before the GAO include activities apparently unrelated to work performed for the proceedings in these tribunals. However, plaintiff has not provided a method that would allow the court to calculate the hours spent on potentially recoverable activities. Thus, the court would deny fees for these entries in their entirety. *See Naporano*, 825 F.2d at 405.

In addition to its attack on fees incurred in actions outside the litigation in this court, defendant presents a meticulously honed list of expenses that it deems overstated or duplicative. Entitlement to an offset is claimed in the amount of $2,561.00, to reflect the 10% discount plaintiff received from Olsson, Frank, and Weeda on the amounts charged for attorney billable hours and online research. Plaintiff responds by citing *Ed A. Wilson, Inc. v. GSA*, 126 F.3d 1406 (Fed.Cir. 1997), for the proposition that plaintiff may recover attorneys' fees in an EAJA action even if it did not incur the fees directly. The Federal Circuit in *Wilson* stated: "It is well-settled that an award of attorney fees is not necessarily contingent on an obligation to pay counsel." *Id.* at 1409. Accordingly, defendant would not be entitled to an offset for the discount granted plaintiff by its attorneys.

Defendant next complains that 4.55 hours of time charged by Olsson, Frank, and Weeda attorneys did "not add anything to the law

---

11. The prohibited time entries are the January 16–18 and 23, 2001 and February 7–8 and 19–20, 2001 entries for Brian Leighton and the January 17–19 and 22, 2001 entries for Olsson, Frank, and Weeda.

12. Defendant has identified the following entries as relating to the GAO proceeding: The January 18 and 22, 2001 entries for Brian Leighton and the January 14–16, 18, 22, 24, 26, and 30, 2001 entries for Olsson, Frank, and Weeda. The January 18, 2001 entry for Mr. Leighton and the January 18 and 22, 2001 entries for the Olsson firm also contain tasks related to the district court litigation, the fees for which are unrecoverable.

13. Plaintiff could recover for the following entries identified by defendant as relating to the COC determination: The December 20, 21, 26, and 29, 2000 and January 2 and 8–10, 2001 entries for Brian Leighton and the January 9–11, 2001 and February 6, 2001 entries for Olsson, Frank, and Weeda. The January 12, 2001 entry for the Olsson firm includes activities that appear unrelated to the SBA/COC proceeding, and plaintiff has not supplied the court with a method to determine the hours spent on recoverable versus non-recoverable activities. Thus, the court would deny the fees for this date in their entirety. *See Naporano*, 825 F.2d at 405.

firm's defense of [plaintiff]," Def.'s Br. filed Apr. 14, 2003, at 38, and thus should be excluded from an EAJA award. It further discounts any EAJA award by four hours because two of plaintiff's attorneys attended the USDA's suspension hearing. Plaintiff makes the valid response that, as to the challenged 4.55 hours billed by the Olsson law firm, "[l]aw firms work the way law firms work, and that is [that] someone else in the firm reviews an associate[']s work." Pl.'s Br. filed May 22, 2003, at 19 n. 7. Moreover, it defends the presence of two attorneys at the USDA suspension hearing because the hearing was of "critical" importance and ultimately led to the litigation in this court. *Id.* at 19. The court would decline to eliminate these disputed hours from plaintiff's EAJA award.

Defendant also submits that plaintiff should not be allowed to recover several "miscellaneous charges." Def.'s Br. filed Apr. 14, 2003, at 40. To the extent that the disputed charges concern activities relating to the proceedings in the federal district court or before the GAO, they would be denied for the reasons stated above.[14] The remaining charges concern activities that are not related to this litigation. The January 13, 2001 charge of .8 hour from Olsson, Frank, and Weeda concerning a call regarding "USDA Superior Ad" does not implicate plaintiff's bid protest action in this court, nor does that firm's January 31, 2001 call with Mr. Lion regarding a "USDA lobbying proposal." Mr. Leighton's January 14, 2001 call with Mr. Lion to discuss "strategy regarding letter to [plaintiff's] employees" also does not relate to plaintiff's bid protest. The court would exclude these charges from any EAJA award.

Defendant also encourages the court to reduce the hours that Mr. Leighton spent performing legal research during the district court litigation, arguing that, despite billing for 12.75 hours of research, plaintiff's lead attorney failed "to adequately research a ba-

sic principle of any civil action—whether the district court had jurisdiction to hear [plaintiff's] lawsuit." Def.'s Br. filed Apr. 14, 2003, at 41. A reduction of 50% in the number of charged hours would be appropriate for this failure to discover an issue that resulted in the dismissal of plaintiff's case. *See PCI/ RCI v. United States,* 37 Fed.Cl. 785, 791 (1997) (reducing claim for research by 50% when plaintiff failed to cite key cases on which court ultimately relied).

### 2) Costs

Defendant takes issue with all of the administrative costs billed plaintiff by its attorneys, contending that these "expenses in their entirety should be disallowed because they are unsupported by any receipts documenting these expenses." Def.'s Br. filed Apr. 14, 2003, at 43.[15] Unlike the award of attorneys' fees under the EAJA, "the trial court has broad discretion to determine whether and how much to award a prevailing party." *Neal & Co., Inc. v. United States,* 121 F.3d 683, 686–87 (Fed.Cir.1997); *Baldi Bros. Constructors v. United States,* 52 Fed. Cl. 78, 86 (2002). This discretion authorizes the trial court "to consider a wide variety of factors, including the conduct of the parties during trial, in reaching its costs decision." *Neal,* 121 F.3d at 687.

Although plaintiff has not submitted contemporaneous invoices to support its claimed costs, little risk is present were the court to accept plaintiff's cost itemization because "plaintiff has no assurance of recovering and must assume it will bear the full cost of litigation. Plaintiff can therefore be expected to exercise control over the time spent and the rates charged." *Florida Rock Indus., Inc. v. United States,* 9 Cl.Ct. 285, 289 (1985). Accordingly, the court would accept plaintiff's calculation of its costs. However, given that some of the costs apply to the district court and GAO proceedings, a *pro rata* reduction in costs would be appropriate.

14. This ruling encompasses fees from the January 23, 2001 time entry for Brian Leighton and the January 16 and 17, 2001 time entries for Olsson, Frank, and Weeda.

15. Defendant's argument that plaintiff has waived its right to costs incurred subsequent to

the filing of its cost statement with the court is without merit. Defendant grounds this argument on RCFC 54(d), which the Federal Circuit has ruled does not govern an award of costs under the EAJA. *See Neal & Co., Inc. v. United States,* 121 F.3d 683, 686 (Fed.Cir.1997).

*See Baldi Bros.,* 52 Fed.Cl. at 85–86. Comparing the time entries relating to the district court and GAO actions (which total 105.7 hours) with the number of attorney hours spent overall (approximately 309 hours) would support a deduction of 30% of the costs claimed by plaintiff.[16] Plaintiff's claimed costs total $5,003.97. When this total is discounted by 30%, plaintiff would be entitled to $3,502.78 in costs.

### 3) Cost of living adjustment

Plaintiff maintains that it is entitled to a cost of living adjustment ("COLA") that would allow it to exceed the $125 hourly rate cap imposed by the EAJA. *See* 28 U.S.C. § 2412(d)(2)(A)(ii). Opposing the requested hourly rate of $142.66, defendant argues that plaintiff has failed to establish that a COLA is warranted.

"Cost of living adjustments are specifically contemplated in the EAJA." *California Marine,* 43 Fed.Cl. at 733; *see also* 28 U.S.C. § 2412(d)(2)(A)(ii). Although the court awards a COLA at its discretion, "the justification for such award is self-evident if the applicant alleges that the cost of living has increased, as measured by the Department of Labor's Consumer Price Index ('CPI')." *California Marine,* 43 Fed.Cl. at 733. Plaintiff in the case at bar requested a COLA in its application for EAJA fees and costs and calculated the applicable COLA, using the CPI, in its subsequent briefing. Thus, plaintiff has satisfied the prerequisites for showing its entitlement to a COLA. *Cf. Weaver-Bailey Contractors, Inc. v. United States,* 24 Cl.Ct. 576, 580–81 (1991) (denying plaintiff's request for COLA because plaintiff failed to supply court with relevant CPI data and deferred entirely to court's discretion).

In calculating the COLA, the court would use the effective date of the statutory cap as its baseline. *See Doty,* 71 F.3d at 387. Although the EAJA was enacted in October 1981, it was amended in March 1996 to increase the hourly fee rate from $75.00 to $125.00. 28 U.S.C. § 2412(d)(1)(D)(2)(A); *see also California Marine,* 43 Fed.Cl. at 733–34. Thus, March 1996 would be the proper baseline to employ for plaintiff's COLA. The endpoint of the COLA calculation is the date the services were rendered. *Chiu,* 948 F.2d at 722; *California Marine,* 43 Fed.Cl. at 734.

Rather than calculating a COLA for each month that its attorneys provided services, plaintiff selected October 2001 as "the midpoint in this litigation," Pl.'s Br. filed May 22, 2003, at 22 n. 9, and used the CPI for that month to calculate the COLA. The Federal Circuit has endorsed the use, "in an appropriate case, [of] a single mid-point inflation adjustment factor applicable to services performed before and after that mid-point." *Chiu,* 948 F.2d at 722 n. 10. Plaintiff's attorneys rendered their services from December 2000 to May 2003, a period spanning 30 months. Thus, choosing the CPI index for February 2002, *i.e.,* the fifteenth month of this litigation, is appropriate.[17] Although plaintiff has not provided the CPI figure for February 2002, the court would take judicial notice of the relevant datum "because the index is widely accepted as a means of calculating cost of living increases." *California Marine,* 43 Fed.Cl. at 734 (citing *Hyatt v. Heckler,* 807 F.2d 376, 383 (4th Cir.1986)).

The Bureau of Labor Statistics sets the CPI for March 1996 (the effective date of the EAJA amendment) at 155.7; for February 2002 (the midpoint of the litigation), it was 177.8.[18] Thus, with the appropriate COLA

---

16. Although the court would exclude time entries that constitute more than 30% of the overall hours worked by plaintiff's attorneys, the court would employ a conservative discount percentage to reflect the fact that plaintiff has not claimed costs in prosecuting its EAJA application.

17. Plaintiff apparently did not factor the fee litigation into its analysis of the proper midpoint. However, plaintiff has submitted an itemized statement of the attorneys' fees incurred during the EAJA portion of its lawsuit and has claimed

entitlement to these fees. Fees incurred during the EAJA litigation are recoverable under the EAJA. *Fritz v. Principi,* 264 F.3d 1372, 1376–77 (Fed.Cir.2001) (discussing *Jean,* 496 U.S. 154, 110 S.Ct. 2316).

18. The court employs the CPI for "All Urban Consumers, U.S. City Average, All Items." Although an ideal CPI would be one which is tied to the areas where the services were performed, plaintiff's legal team consists of firms in Clovis, CA, and Washington, DC. There is no individual CPI for Clovis, CA, and the Department of Labor,

adjustor, plaintiff would be entitled to an hourly rate of $142.74.[19]

In sum, were plaintiff to qualify for an EAJA award, plaintiff would be entitled to attorneys' fees and costs, as follows:

Fees: 190.87 hours × $142.74/ hr = $27,244.78 [20]
Costs: $ 3,502.78
Total: $30,747.56

as of November 1996, ceased issuing a CPI tied only to Washington, DC, instead employing a CPI for the Washington–Baltimore metro area. *See California Marine*, 43 Fed.Cl. at 734 n. 8.

**19.** $125.00 × 177.8/155.7 = $142.74

**20.** Defendant objected to Mr. Leighton's charging $200 per hour for the two and one-half hours

## CONCLUSION

Because plaintiff has failed to qualify for an EAJA award, its application is denied. No costs on the application.

that he spent attending the December 8, 2001 hearing in the Court of Federal Claims litigation. The court has reduced the hourly fee charged for this time to $142.74 and has factored this amount into the award that plaintiff would have received had it been eligible for attorneys' fees under the EAJA.