The **DALLES IRRIGATION DISTRICT, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 05–1042C.

United States Court of Federal Claims.

March 2, 2010.

Arden E. Shenker, Shenker & Bonaparte, LLP, Portland, Oregon.

Amanda Tantum, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Tony West, Assistant Attorney General, Civil Division, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

A post-trial judgment was issued in plaintiff's favor in this contract case involving rates for supply of reserved power from hydroelectric units at The Dalles Dam on the Columbia River to an irrigation district in Oregon. *See Dalles Irrigation Dist. v. United States*, 88 Fed.Cl. 601 (2009) (*"Dalles III "*). As allowed by that judgment, plaintiff ("the District") has filed a Bill of Costs; in addition, it has moved for an award of attorneys' fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Overall, the District seeks $933,909.06 in attorneys' fees and expenses and $20,536.95 in costs. The government resists any award of attorneys' fees and expenses, maintaining that its position in the underlying litigation was substantially justified and the requisite criteria for an award pursuant to EAJA have not been satisfied. The government also questions elements of the District's costs.

## BACKGROUND

This case was initiated on August 18, 2004, when the District filed a complaint in the United States District Court for the District of Oregon alleging breach of a contract under which the United States Department of the Interior, Bureau of Reclamation ("the Bureau"), was obligated to supply the District with hydroelectric power for irrigation pumping. In light of the Supreme Court's ruling in *Orff v. United States*, 545 U.S. 596, 125 S.Ct. 2606, 162 L.Ed.2d 544 (2005),[1] the case

---

1. This case was filed in federal district court in Oregon pursuant to 43 U.S.C. § 390uu. The Supreme Court in *Orff* held that Section 390uu only applies in cases where the United States is joined as a party defendant in an action between third parties to adjudicate rights under a federal

was subsequently transferred to this court and was docketed here on September 28, 2005. *See Dalles Irrigation Dist. v. United States*, 71 Fed.Cl. 344, 345, 349 (2006) ("*Dalles I*"). The District claimed that the government contravened the contract by overcharging for energy and sought monetary damages. After a motion by the government to dismiss the District's transfer complaint on statute-of-limitations grounds was rejected, *see id.* at 351–53, the parties stipulated to bifurcation of the proceedings into liability and damages phases.

After a trial on liability, the court found that the Bureau had breached its contract with the District to the extent that it had wrongfully included a "lost revenue component" in the rates charged to the District for irrigation pumping power. *See Dalles Irrigation Dist. v. United States*, 82 Fed.Cl. 346, 366–67 (2008) ("*Dalles II*"). Thereafter, a trial was held to determine what damages, if any, the District was entitled to be awarded as a result of the inclusion of the lost revenue component. *See Dalles III*, 88 Fed.Cl. at 604. Based upon evidence adduced in the trial of damages, the court awarded the District damages in the amount of $172,954. *Id.* at 614. The court also awarded the District its costs of suit. *Id.*

Once·the award of damages had become final, the District filed its motion for attorneys' fees and expenses and Bill of Costs on October 21, 2009. Supplemental submissions were received from the District on December 7, 2009 and January 13, 2010. The disputed matters have been fully briefed and are now ready for disposition.

## ANALYSIS

### I. FEES AND EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT

#### A. *EAJA Requirements*

■ EAJA provides a mechanism by which a qualifying party may receive an award of reasonable attorneys' fees. 28 U.S.C. § 2412(d)(1)(A), (B). To be eligible for such an award, five criteria must be satisfied: (1) the applicant must have been a "prevailing party" in a suit against the United States; (2) the government's position must not have been "substantially justified;" (3) there cannot be any "special circumstances [that] make an award unjust;" (4) any fee application must be submitted to the court within thirty days of final judgment in the action and must also be supported by an itemized statement; and (5) a qualifying party must, if a corporation or other organization, have not had more than $7,000,000 in net worth and 500 employees at the time the adversarial adjudication was initiated. 28 U.S.C. § 2412(d)(1), (2); *see Commissioner, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990); *ACE Constructors, Inc. v. United States*, 81 Fed.Cl. 161, 164 (2008); *Geo–Seis Helicopters, Inc. v. United States*, 79 Fed.Cl. 74, 76–77 (2007). The District bears the burden of establishing that it meets these requirements, except that the government has the burden to show that its position was substantially justified. *See White v. Nicholson*, 412 F.3d 1314, 1315 (Fed.Cir.2005); *Hillensbeck v. United States*, 74 Fed.Cl. 477, 479–80 (2006); *Al Ghanim Combined Group Co. v. United States*, 67 Fed.Cl. 494, 498 (2005).

The District filed its motion for attorneys' fees and expenses and Bill of Costs within thirty days after the judgment entered August 21, 2009 became final and not appealable. *See* 28 U.S.C. § 2412(d)(2)(G). The government does not contest that the District's EAJA application and Bill of Costs were timely filed. The government also does not contest that the District, having shown that the government's inclusion of a lost revenue component contravened the parties' contract, is a "prevailing party" within the meaning of the statute. *Cf. Owen v. United States*, 861 F.2d 1273, 1274 (Fed.Cir.1988) ("[A] prevailing party under the EAJA is one succeeding on any significant issue which

reclamation contract. *See* 545 U.S. at 602–03, 125 S.Ct. 2606. Because this was a suit brought directly against the United States, the District could no longer pursue its claims in the district court under Section 390uu, and the case was transferred to this court to proceed under the Tucker Act, 28 U.S.C. § 1491(a)(1). *See Dalles III*, 88 Fed.Cl. at 604 n. 1.

achieves some of the benefits sought by the suit." (citation omitted)). The government does dispute, however, whether the remaining criteria have been satisfied, arguing that the court should deny the District's EAJA application because (i) the government's position was "substantially justified," (ii) the District failed to provide an "itemized statement" of fees sought, (iii) the District has not established that it is a "qualifying party" within the meaning of the statute, and (iv) "special circumstances" exist which would make an EAJA award unjust. *See* Def.'s Resp. to Pl.'s App. for Fees and Expenses Pursuant to the Equal Access to Justice Act at 2, 10, 13, 17 ("Def.'s Opp'n to Pl.'s EAJA App.").

### 1. *"Substantially justified."*

██ The burden of proving that its litigation position was "substantially justified" rests on the government. *See White,* 412 F.3d at 1315; *Hillensbeck,* 74 Fed.Cl. at 479–80; *Lion Raisins, Inc. v. United States,* 57 Fed.Cl. 505, 512 (2003). An award pursuant to Section 2412(d) is precluded if the government shows its position to be " 'justified in substance or in the main' that is, justified to a degree that could satisfy the reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The court does not examine a party's stance upon every individual issue addressed in the case, *Gargoyles, Inc. v. United States,* 45 Fed.Cl. 139, 148 (1999); rather, the question is "whether the government's overall position [both prior to and during the litigation] had a reasonable basis in both law and fact." *Chiu v. United States,* 948 F.2d 711, 714–15 (Fed. Cir.1991); *see also Blakley v. United States,* 593 F.3d 1337, 1341 (Fed.Cir.2010) ("In the context of EAJA claims, we have held that the 'position of the United States' in judicial proceedings refers to the United States' position 'throughout the dispute, including not only its litigating position but also the agency's administrative position.' " (quoting *Doty v. United States,* 71 F.3d 384, 386 (Fed.Cir. 1995))).

██ The government's position "can be justified even though it is incorrect, and it can be substantially justified if a reasonable person could think it correct." *Manno v. United States,* 48 Fed.Cl. 587, 589 (2001) (internal quotations omitted). The inquiry is "not what the law now is, but what the [g]overnment was substantially justified in believing it to have been." *Loomis v. United States,* 74 Fed.Cl. 350, 355 (2006) (quoting *Pierce,* 487 U.S. at 561, 108 S.Ct. 2541). "Substantially justified" is not to " 'be read to raise a presumption that the [g]overnment position was not substantially justified simply because it lost the case.' " *Scarborough v. Principi,* 541 U.S. 401, 415, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) (quoting H.R.Rep. No. 96–1005, at 10 (1980)). Rather, substantial justification occurs somewhere between winning the case and being "merely undeserving of sanctions for frivolousness." *See Pierce,* 487 U.S. at 566, 108 S.Ct. 2541.

The government posits three arguments in support of the proposition that its overall position in this litigation was substantially justified. First, the government argues that its inclusion of a lost revenue component in the irrigation pumping power rate was based on a "reasonable" interpretation of its statutory duty under the authorizing legislation, which provides that the power rate should take into account "all costs" of furnishing power to the District, and of the provisions of the parties' contract. Def.'s Opp'n to Pl.'s EAJA App. at 3–5. Second, the government argues that its position was substantially justified because "this is a case of first impression." *Id.* at 6–7. The government avers that "[it can] find no prior case law involving reserved power for irrigation pumping power and the use of a power cost adjustment mechanism ( [such as] the lost revenue component in this lawsuit) and its application to a multi-year rate cycle." *Id.* at 6. Third, the government argues that "[its] position [was] even more reasonable—and thus substantially justified—when considering [that] the District [ ] [sought] to exclude much more than the lost revenue component from the rate," *id.* at 8, and "was awarded just $172,594 of the approximately $8 million in damages pursued by the District." *Id.* at 9. The District questions the validity of all of these arguments, contending that the government "has failed in shouldering its burden of proof" to establish that its overall position was sub-

stantially justified. Pl.'s Reply to Def.'s Resp. to Pl.'s App. for Fees and Expenses at 5 ("Pl.'s Reply to Def.'s Opp'n to Pl.'s EAJA App.").

■ The government's argument that its use of a lost revenue component was reasonable, and thus that its position in this litigation was substantially justified, is problematic. By including the lost revenue component in the power rate charged to the District, the government directly contravened the terms of the parties' contract in two particular ways. First, the parties' contract required, and the government acknowledged, that changes to the power rate charged to the District were to occur no more frequently than once every five years. *Dalles II*, 82 Fed.Cl. at 364. Whatever the purpose of the lost revenue component, its obvious effect was to "circumvent [this] periodic five-year cycle ... through [its] true-up mechanism," which in effect adjusted the power rate charged to the District more frequently than once every five years. *Id.* at 365. Second, the lost revenue component also included substantial interest as a cost to the District despite the fact that "the rates charged to The Dalles were intended by Congress to be set on the basis of interest-free financing." *Id.* Accordingly, the government's argument that its actions were reasonable with regard to the lost revenue component is insufficient to meet its burden of proof on the issue of substantial justification. *See Geo–Seis*, 79 Fed.Cl. at 78 ("The government's position will not be found to be reasonable or substantially justified when explicit, unambiguous regulations directly contradict that position." (citation omitted)).

■ The government's next assertion, that its position was substantially justified because this case involved issues of first impression, also is unavailing. The novelty of a legal issue does not by itself satisfy the government's burden of proof under EAJA. *See Devine v. Sutermeister*, 733 F.2d 892, 895 (Fed.Cir.1984) ("[T]he novelty of the government's position cannot compensate for the paucity of support in favor of that position."), *superseded on other grounds by statute as recognized in Doty*, 71 F.3d at 385. Statutorily, "[w]hether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." 28 U.S.C. § 2412(d)(1)(B). In short, the determination respecting substantial justification must be based on the entire record of the proceedings without reference to *per se* rules. *See Gutierrez v. Barnhart*, 274 F.3d 1255, 1261 (9th Cir.2001) ("[T]here is no per se rule that EAJA fees cannot be awarded where the government's litigation position contains an issue of first impression."); *see also United States v. Douglas*, 55 F.3d 584, 588–89 (11th Cir.1995) (rejecting the government's contention that its position was substantially justified because it raised a question of first impression); *Hyatt v. Shalala*, 6 F.3d 250, 256 (4th Cir.1993) (examining the whole of the government's conduct, despite the fact that a discrete issue in the case was one of first impression).

■ The government's remaining contention, that its position was substantially justified because the District "[only] prevailed on *one* of its numerous claims" and "was awarded just $172,594 of the approximately $8 million in damages [it] pursued," Def.'s Opp'n to Pl.'s EAJA App. at 8–9, overlooks the important principle that "attorney's fees are not limited to the dollars awarded," *Hubbard v. United States*, 80 Fed.Cl. 282, 286 (2008), *aff'd*, 315 Fed.Appx. 307 (Fed.Cir. 2009), nor is it necessary for the claimant to have obtained success on all items of relief requested. *Naekel v. Department of Transp.*, 884 F.2d 1378, 1379 (Fed.Cir.1989) ("It is not necessary to succeed on every issue to meet the criterion of 'prevailing party' as contemplated by the EAJA."); *ACE Constructors*, 81 Fed.Cl. at 168 ("The government cannot generate substantial justification for its overall position by the fact that it prevailed on some secondary issues," nor can it rest on the basis that the actual award was less than the amount sought.). Nonetheless, the degree of success obtained by the District in this action may affect the proportional amount of fees awardable under

EAJA. As the Supreme Court observed in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983):

> If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*Id.* at 436, 103 S.Ct. 1933; *see also Hubbard v. United States*, 480 F.3d 1327, 1332–33 (Fed.Cir.2007) (considering plaintiff's "limited success" in determining fee award); *Moriarty v. Svec*, 233 F.3d 955, 967–68 (7th Cir. 2001) (holding that the trial court should consider the proportionality of EAJA fees to the judgment obtained in the action).[2] Consequently, in a case where significant but partial success was obtained, the degree of success factors into the amount of fees awarded but does not constitute substantial justification.

Accordingly, as the government has failed to show that its overall position in this litigation was substantially justified, the District will be entitled to an award of reasonable attorneys' fees provided it has satisfied EAJA's remaining statutory requirements.

### 2. *"Itemized statement."*

An EAJA claimant is required to provide an "itemized statement ... stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B). The government argues that the court should reject the District's EAJA application because "[t]he District fails to itemize the fees sought in any way, indicate the number of hours of attorney time for which it seeks fees, or explain which attorney's time it seeks to recover," as required

by Section 2412(d)(1)(B). Def.'s Opp'n to Pl.'s EAJA App. at 10–11 (citing *Naporano Iron and Metal Co. v. United States*, 825 F.2d 403, 404 (Fed.Cir.1987) for the proposition that "[t]he prevailing party must provide the Court with information detailing the 'exact time spent on the case, by whom, their status and usual billing rates, as well as a breakdown of expenses'"). The government also avers that "[t]he District has submitted contradictory requests for attorney fees, making it impossible to determine the attorneys and tasks for which the District seeks fees." *Id.* at 11. The District responds that the government's approach of "requir[ing] [attorneys] to keep almost perfect records" is "draconian," arguing that "counsel [need only] conscientiously keep records and time sheets which 'should identify the general subject matter of his [or her] time expenditures,'" a standard the District avers it has met. Pl.'s Reply to Def.'s Opp'n to Pl.'s EAJA App. at 19 (quoting *Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. 1933, and citing *Ramos v. Lamm*, 713 F.2d 546, 553 n. 2 (10th Cir.1983) (permitting use of, but requiring special scrutiny of, reconstructed time records)).

In support of its EAJA application, the District submitted copies of invoices contemporaneously submitted to the District by counsel, Shenker & Bonaparte, LLP, and Carol Opatrny, an expert retained by the District in this case. *See* Aff. of Arden E. Shenker (filed Oct. 21, 2009) Ex. A (invoices of professional services rendered by Shenker & Bonaparte, LLP for the District from Jan. 13, 2003 to Sept. 13, 2009) ("Shenker Aff."); *id.* at Ex. F (Aff. of Carol Opatrny (Sept. 11, 2009)). The District avers that it has incurred additional attorneys' and expert witness fees since September 13, 2009, for which fees it submitted a supplemental motion for attorneys' fees and expenses on January 13, 2010. Pl.'s Mot. for Supp. Fees and Other Expenses ("Pl.'s Supp. EAJA App."). In support of its supplemental EAJA application, the District submitted a second affidavit

---

**2.** In *Hubbard,* the Federal Circuit held that certain fee shifting principles which pertain to cases brought pursuant to the Civil Rights Act, 42 U.S.C. § 1988, should be applied by analogy to

EAJA awards. 480 F.3d at 1333 (referring in particular to *Hensley,* 461 U.S. 424, 103 S.Ct. 1933).

by Mr. Shenker ("Supp. Shenker Aff."), accompanied by supporting documentation for the supplemental fees sought, akin to that which accompanied the first affidavit by Mr. Shenker. *See* Supp. Shenker Aff. Ex. A (invoices of professional services rendered by Shenker & Bonaparte, LLP for the District from Sept. 14, 2009 to Jan. 7, 2010); *id.* at Ex. D (Aff. of Carol Opatrny (Jan. 11, 2010)). The documentary submissions attached to both Shenker affidavits describe the activities performed on the District's behalf, the date on which these services were provided, the hours spent, and the rates charged to the District. *See* 28 U.S.C. § 2414(d)(1)(B). In light of these submissions, the government's objections are unavailing and the submissions satisfy EAJA's requirement of an itemized statement.

### 3. *"Qualifying party."*

▮ The District avers that it satisfies the statutory definition of a "qualifying party," *i.e.*, a corporation or other organization with a net worth of less than $7 million and 500 or fewer employees. *See* 28 U.S.C. § 2412(d)(2)(B). In support of its EAJA application, the District submitted an affidavit of Michael Floyd Richardson, Manager of the District from 2003 to the present, which stated that "throughout the years 2003 through 2005, and to the present, [t]he [District] did not have a net worth of as much as $7 million, much less exceeding same, and at no time did [t]he [District] employ as many as 500 employees." Shenker Aff. Ex. E at ¶ 2 (Aff. of Michael Richardson (Sept. 4, 2009)) ("Richardson Aff."). Initially, the District did not provide any documentation to support Mr. Richardson's assessment of the District's net worth and number of employees. Subsequently, however, in conjunction with

the submission of the District's Supplemental EAJA Application, Mr. Richardson provided a second affidavit that reported the District had "a negative net worth, as to net assets." Supp. Shenker Aff. Ex. C at ¶ 2 (Aff. of Michael Floyd Richardson (Jan. 7, 2010) ("Second Richardson Aff.")). Appended to the Second Richardson Affidavit was an independent auditor's report disclosing financial results for the years 2004 and 2005, which showed total net assets of negative $1,366,650 and negative $1,413,951 for those fiscal years, respectively. *Id.* at 5. Mr. Richardson also averred that "[a]t no time has The Dalles Irrigation District employed as many as 50 employees, much less 500 employees." *Id.* ¶ 2.[3]

The government contends that the District's financial posture is insufficient to establish its qualification for an EAJA award because the court should "aggregate the assets of the farms [that receive water through the Dalles Irrigation Project] for purposes of determining EAJA eligibility." Def.'s Opp'n to Pl.'s EAJA App. at 15–16 (citing *National Truck Equip. Ass'n v. National Highway Traffic Safety Admin.*, 972 F.2d 669, 672–74 (6th Cir.1992)). The government observes that under Oregon law, the District "acts as a trustee for its member farms with respect to the members' water rights." *Id.* (citing *Fort Vannoy Irrigation Dist. v. Water Res. Comm'n*, 345 Or. 56, 188 P.3d 277, 295 (2008); *Smith v. Enterprise Irrigation Dist.*, 160 Or. 372, 85 P.2d 1021, 1024 (1939)). Correlatively, the government argues that the District is not the real party in interest to this litigation. *See id.* at 15 (citing *Lion Raisins*, 57 Fed.Cl. at 510, for the proposition that aggregation is necessary "if the [EAJA] claim-

---

**3.** The Second Richardson Affidavit obviates the government's objection that the first Richardson Affidavit was "insufficient to establish eligibility for an EAJA award," because the District had "failed to comply with its burden to provide information verifying its net worth." Def.'s Opp'n to Pl.'s EAJA App. at 14. The government contended that "[t]he [c]ourt has routinely required [EAJA applicants to provide] audited financial information consistent with generally-accepted accounting principles." *Id.* (citing *Scherr Constr. Co. v. United States*, 26 Cl.Ct. 248, 251(1992)).

The District's supplementation with audited financial information is appropriate. *See Bazalo v. West*, 150 F.3d 1380, 1383 (Fed.Cir.1998) ("[W]hile the time limitation [on filing an EAJA application] should be strictly met, the content of the EAJA application should be accorded some flexibility."); *Scarborough*, 541 U.S. at 416–23, 124 S.Ct. 1856 (holding that the "relation-back" principle permits an EAJA applicant to supplement or amend a timely but incomplete application).

ant [is] not the real party in interest to the underlying litigation").

The courts of appeals have divided on the issue of aggregation. The Sixth Circuit's decision in *National Truck* concludes that aggregation of the net worth and number of employees of trade association members is required when those associations are primarily representing the interests of their members, and that an association is ineligible for a fee award if these aggregated numbers exceed the statutory ceilings, even if no individual member exceeds them on its own. 972 F.2d at 673–74. By contrast, the District of Columbia Circuit's decision in *National Ass'n of Manufacturers v. Department of Labor*, 159 F.3d 597, 602 (D.C.Cir.1998), concludes that "[w]e simply have no indication that Congress intended to exclude small associations representing large members from the benefits conferred by the EAJA." Similarly, the Fifth Circuit's decision in *Texas Food Industry Ass'n v. United States Department of Agriculture*, 81 F.3d 578, 582 (5th Cir.1996), holds that the plain language of 28 U.S.C. § 2414(d)(2)(B) "provides no basis for the aggregation requirement [for trade associations] that the government would have us engraft."[4] In like vein, the Ninth Circuit's decision in *Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir.1991), adopts a "standing" analysis when determining EAJA eligibility, deeming the net worth of plaintiff association's members material only if the members "were liable for the [association's] attorney's fees."

 This court is persuaded by the decisions of the Fifth, Ninth, and District of Columbia Circuits holding that the language of 28 U.S.C. § 2412(d)(2)(B)(ii) unambiguous-

ly contemplates that it is the association alone that must satisfy the standards for eligibility, not also its constituent members as an aggregate group. As stated by the District of Columbia Circuit in *National Ass'n of Manufacturers:*

> The government does not dispute ... that an association is eligible for a fee award without regard to the eligibility of its members in at least some circumstances-namely, when it sues for injury to the association itself.... [T] he government's argument [therefore] requires ... the insertion of an entire "except" clause: e.g., that an association is eligible if its net worth does not exceed $7,000,000, "except if it is suing in a representational capacity, in which case the net worth of each of its members must also not exceed $7,000,000." There is, of course, no "except" clause in the statute, and we are without authority to insert one.

159 F.3d at 600.[5] Accordingly, for purposes of determining whether the District is a "qualifying party" entitled to an EAJA award, the court has not required the District to submit any information concerning the net worth of its member farms or the number of their employees.

However, as a consequence of the government's contention that the District is not the real party in interest, the court did request, and has considered, information submitted by the District regarding whether this litigation was financed from the District's general budget or by special assessments levied against its members. *See* Second Supplemental Aff. for Michael F. Richardson (Jan. 25, 2010) (attached to Pl.'s Mot. to Submit Evidence (Jan. 25, 2010)) ("Third Richardson Aff."). In his third affidavit Mr. Richardson stated

---

**4.** In *Texas Food*, the United States Department of Agriculture argued that because 28 U.S.C. § 2412(d)(2) explicitly exempts agricultural co-operatives and non-profit organizations from EAJA's net worth requirements, the statute "should be construed to exempt from the aggregation requirement only the ... types of associations specifically referred to by Congress, and no others." 81 F.3d at 581 (internal quotations omitted). The Fifth Circuit was "unpersuaded," however, "that EAJA's special eligibility rule for agricultural cooperatives and non-profit organi-

zations is evidence of an implicit aggregation rule [for all other associations]." *Id.*

**5.** The "except" clause proffered by the government in this case would go even further than that urged by the government in *National Ass'n of Manufacturers*, making the District ineligible for an EAJA award if the net worth of the member farms, *in the aggregate*, would exceed the $7 million ceiling. *See supra*, at 701. This approach to aggregation has only been accepted by the Sixth Circuit in *National Truck*, 972 F.2d at 673. *See supra*, at 701.

that "[t]he financing of the litigation in this case came from the general budget of The Dalles Irrigation District." *Id.* ¶ 2. While the District's member farms may certainly benefit from the District's ability to enforce its contract with the government, the District, not the individual farmers, is the party to the contract and holds the rights under the contract. That circumstance, coupled with the fact that the financing for this litigation came from the District's general budget, demonstrates that the District is the real party in interest to this litigation and provides further reason why aggregation, even if appropriate in some circumstances, would not be suitable for this case. This reasoning comports with the Ninth Circuit's decision in *Love* and the earlier decision by Judge Christine Miller of this court in *Lion Raisins. See Love*, 924 F.2d at 1494 ("The members of the [association] would be the real party in interest in the fee litigation only if they were liable for the [association's] attorney's fees."); *Lion Raisins*, 57 Fed.Cl. at 510 ("The jurisprudence makes clear that aggregation, if required at all, is necessary only when the underlying litigation pursued by the EAJA claimant substantially benefitted another party, or if the claimant was not the real party in interest to the underlying litigation.").[6]

Because the District itself meets EAJA's net worth requirements, *see* Second Richardson Aff. ¶ 2, the court concludes that the District has established that it qualifies for an EAJA award.

### 4. *"Special circumstances."*

 EAJA provides, in pertinent part, that

> a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States in any court having ju-

risdiction of that action, unless the court finds that the position of the United States was substantially justified or that *special circumstances* make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). The government argues that even if the court concludes that aggregation is not appropriate in this case, the court should nonetheless deny the District's EAJA application (or reduce any EAJA fee award) because the benefits of such an award would likely flow ultimately to the District's members who may themselves be ineligible for an EAJA award if their net worth and number of employees were to be aggregated. Def.'s Opp'n to Pl.'s EAJA App. at 17–18 (citing *State of Louisiana ex rel. Guste v. Lee*, 853 F.2d 1219, 1224 (5th Cir.1988) ("[I]n special circumstances the participation of a party ineligible for EAJA fees may make a fee award for other eligible parties unjust.")). In response, the District maintains that it meets EAJA's net worth requirements and that the characteristics of its constituent members are irrelevant to its EAJA eligibility. Pl.'s Reply to Def.'s Opp'n to Pl.'s EAJA App. at 10–11, 13–14.

As discussed *supra*, the District is the real party in interest to this litigation and any benefits that have been or could be conferred on the District's members stemming from the District's participation in this lawsuit are attenuated. Whether the members, when taken in the aggregate, would themselves be ineligible for an EAJA award is irrelevant to the question of whether the District itself is entitled to an EAJA award. Accordingly, this consideration cannot form the basis of a special circumstance making an EAJA award unjust.

### 5. *Synopsis.*

Taken as a whole, the government's position in this litigation was not substantially justified. The government's argument that it acted based on a "reasonable interpretation"

---

**6.** In *Lion Raisins*, the court observed that "[t]he Federal Circuit appears to have endorsed the use of a real-party-in-interest analysis when determining the identity of the prevailing party under the EAJA." 57 Fed.Cl. at 510 n. 5 (citing *Phillips v. General Servs. Admin.*, 924 F.2d 1577, 1583 n. 5 (Fed.Cir.1991); *Wall Indus., Inc. v. United States*, 15 Cl.Ct. 796, 803–04 (1988), *aff'd*, 883

F.2d 1027, 1989 WL 81684 (Fed.Cir.1989)). The government raised the real-party-in-interest issue only in the context of aggregation, *see* Def.'s Opp'n to Pl.'s EAJA App. at 14–15, but, in light of the Federal Circuit's apparent position, the court has treated the real-party-in-interest issue as a separate question to be resolved.

of the parties' contract and the statute underlying that contract is unavailing. By including the lost revenue component in the power rate charged to the District, the government directly contravened the contract and the statutory basis for that contract. The District has met the requirements of EAJA and is therefore entitled to an award of reasonable attorneys' fees pursuant to the statute.

### B. *Attorneys' Fees*

A $125 per-hour cap applies to attorneys' fees awarded pursuant to EAJA, "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). The District seeks to recover the actual attorneys' fees incurred, $773,536.00, *see* Pl.'s EAJA App. (EAJA Form 5 attached) ($734,597.75 in attorney's fees); Pl.'s Supp. EAJA App. (EAJA Form 5 attached) ($38,938.75 in attorney's fees), which fees reflect a rate significantly higher than $125 per hour, based upon a claim that "special circumstances" justify an award in excess of the statutory cap. In the District's view, (1) "[t]his case was unique because the information necessary to establish the defendant's liability came from the defendant, and it was like pulling teeth to extract that information"; (2) " [m]easured as a whole, the government's position has been without justification, much less substantial justification"; and (3) "specialized knowledge and skills were needed to obtain a judgment for the plaintiff." Pl.'s Mem. Supporting Fee Requests at 1–4; *see also* Shenker Aff. ¶ 4 (referring to "distinctive knowledge and specialized skills necessary for the litigation in the captioned case"); *id.* at Ex. B, ¶ 12 (Aff. of John Cameron, an attorney specializing in energy-rate-related matters, stating that "the expertise and effort of Mr. Shenker in the instant case warrants a billing rate of at least the $450/hour requested in plaintiff's motion"). Alternatively, the District requests that the court apply a cost of living adjustment ("COLA") to the EAJA capped rate. *See id.* at Ex. D (computation of monthly COLAs by Carol Opatrny through Sept. 14, 2009); Supp.

Shenker Aff. Ex. B (same, through Jan. 7, 2010).

The government argues first that "the nearly $1 million in EAJA fees that the District now seeks is grossly disproportionate to the *minimal* litigation success it has achieved," and that "the [c]ourt should reduce the attorneys' fees sought by the District by removing those hours expended on unsuccessful arguments." *See* Def. Opp'n to Pl.'s EAJA App. at 19–20. Second, responding to the District's request that the court award attorneys' fees in excess of the statutory cap of $125 per hour, the government asserts that the so-called "expertise enhancement" the District seeks should be reserved for those attorneys who have received "specialized training" and not for attorneys practicing in a field such as "utility ratemaking" that, while involving " 'a complex statutory and regulatory framework,' " " 'is not beyond the grasp of a competent practicing attorney with access to a law library and the other accoutrements of modern legal practice.' " *Id.* at 27–28 (quoting *Chynoweth v. Sullivan,* 920 F.2d 648, 650 (10th Cir.1990)).

### 1. *Degree of success.*

Regarding the government's first responsive argument, in *Hensley,* the Supreme Court held that when a plaintiff's claims involve "a common core of facts or [are] based on related legal theories," "the most critical factor" a court must consider in determining whether to adjust an award of reasonable attorneys' fees is "the degree of success obtained" in the litigation. *Hensley,* 461 U.S. at 435–36, 103 S.Ct. 1933. A plaintiff need not prevail on every contention raised in the lawsuit to recover a full fee. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.* at 435, 103 S.Ct. 1933. However, "[i]f ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436, 103 S.Ct. 1933. In *Hubbard,* the Federal Circuit clarified that "a ratio [of damages

sought to damages awarded] provides little aid in determining what is a reasonable fee in light of all the relevant factors." *Hubbard,* 480 F.3d at 1333–34 (quoting *Hensley,* 461 U.S. at 435 n. 11, 103 S.Ct. 1933 (internal citation omitted)). Rather, the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933.

As a result, contrary to the government's suggestion, the court need not engage in a tediously detailed analysis of every hour billed, assigning time to different issues. The several claims presented by plaintiff arise from "a common core of facts" related to the power rate to be charged to the District under the parties' contract, and thus the standard is whether the degree of success the District achieved renders an award based on total hours spent unreasonable. The District achieved partial but significant success in this litigation. At an early procedural stage of this case, the District successfully resisted a claim by the government that the action should be dismissed on statute-of-limitations grounds. *See Dalles I,* 71 Fed.Cl. at 345, 352–53. During the liability phase, the District prevailed on the issue of justiciability and successfully challenged the lawfulness of the lost revenue component. *Dalles II,* 82 Fed.Cl. at 357–60, 364–65.[7] However, the District was not successful with regard to the other disputed components of the reserved-power rate, namely, operation and maintenance ("O & M") costs, fish and wildlife costs, and replacement (or depreciation) costs, which were all found to be properly charged to the District. *See id.* at 360–64. The District ultimately obtained a final judgment of $172,954 in damages. *Dalles III,* 88 Fed. Cl. at 614. Additionally, the court should also take into account the fact that the District carried forward its unsuccessful argu-

ments regarding replacement costs to the damages trial. *See id.* at 605.

Overall, although "[t]here is no precise rule or formula for making ... determinations" on the degree of success obtained, the court's "equitable judgment" is that the District's ultimate success on the issue of the lost revenue component is best characterized as a "partial or limited success," and not as an "excellent result" given the other categories of costs plaintiff pursued without success (O & M, fish and wildlife, and replacement). *See Hensley,* 461 U.S. at 435–37, 103 S.Ct. 1933. In the circumstances, the court concludes that the District should receive reasonable attorneys' fees in an amount roughly proportional to the issues put forward throughout the case on which it prevailed, *viz.,* statute of limitations, justiciability, and the lost revenue component of its rate, compared to the major issues litigated by the parties. Accordingly, the District shall be awarded three-sevenths of the reasonable attorneys' fees it has incurred during the course of this litigation.[8]

#### 2. *An enhanced award.*

In addition, there is merit to the government's argument that the District is not entitled to an enhanced award for Mr. Shenker's fees. In *Pierce,* 487 U.S. 552, 108 S.Ct. 2541, the Supreme Court stated that exceptions to EAJA's $125 per-hour cap on attorneys' fees "are not of broad and general application." *Id.* at 573, 108 S.Ct. 2541. Factors such as "[t]he 'novelty and difficulty of issues,' ... [and] the 'work and ability of counsel,'" are an insufficient basis for an enhanced fee award because such factors are "applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are." *Id.* (citations omitted). Congress intended the en-

---

7. The government's arguments pertinent to relative success, *see* Def.'s Opp'n to Pl.'s EAJA App. at 20–23 (table showing District only prevailed on one issue, the lost revenue component of its rate), ignore the losses it sustained on its statute-of-limitations contention and on its assertion at the liability stage that the District's claim was non-justiciable because the Secretary of Interior had unfettered discretion to establish the rate for reserved power payable by the District.

8. The District prevailed on the issues associated with statute of limitations, justiciability, and the lost revenue component of its rate, and it lost on the O & M, fish and wildlife, and replacement (depreciation) aspects of the rate. It also lost on reiterated arguments respecting replacement costs made at the damages phase of the case.

hanced-fee exception to apply only to attorneys "having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id.* at 572, 108 S.Ct. 2541. Entitlement to an enhanced fee award is not a matter of attorney competency. Although this case was complex, raising unique rate-related issues regarding reserved power particular to the irrigation district associated with The Dalles Dam, and although the statutory law underlying the contract at issue had not previously been addressed in litigation, the court is not convinced that the nature of the case falls within an "identifiable practice specialty" as contemplated by the Court in *Pierce.*

### 3. *A COLA adjustment.*

Adjustments to the cap on attorney's fees for increased cost of living are a different matter. To receive an adjusted award, a plaintiff must "allege [ ] that the cost of living has increased, as measured by the Department of Labor's Consumer Price Index ('CPI')," *California Marine Cleaning, Inc. v. United States,* 43 Fed.Cl. 724, 733 (1999), and supply the court with relevant CPI data. *See Lion Raisins,* 57 Fed.Cl. at 519 (citing *Weaver–Bailey Contractors, Inc. v. United States,* 24 Cl.Ct. 576, 580–81 (1991)). Such an adjustment should be freely granted. *See Baker v. Bowen,* 839 F.2d 1075, 1084 (5th Cir.1988) (stating that absent "unusual circumstances," an award of EAJA attorneys' fees should include a cost-of-living adjustment); *see also Payne v. Sullivan,* 977 F.2d 900, 903 n. 2 (4th Cir.1992) (acknowledging that many circuits "regard the cost of living adjustment as 'essentially perfunctory or even mandatory'" (citation omitted)); *id.* at 903 ("It would undermine the purpose of EAJA to remove the financial disincentive to challenge wrongful government action if district courts could simply withhold an inflation adjustment without reason." (internal quotation marks omitted) (citation omitted)).

The government has not strongly resisted a cost-of-living adjustment in this case, nor has it contested the District's method for calculating the adjustment. *See* Def.'s Opp'n at 25–26. The only argument the government makes against applying a cost-of-living adjustment is that "the District has not established why the [c]ourt should apply the COLA adjustment—a decision that is within the [c]ourt's discretion." *Id.* at 26. Assuredly, the decision to apply a COLA adjustment is within the court's discretion. And, given the long and complicated history of this case, originally filed in August 2004 and subsequently transferred to this court in September 2005 as required by the Supreme Court's decision in *Orff,* and thereafter litigated to resolution against a motion to dismiss and after separate trials on liability and damages, the court finds it appropriate to apply a COLA adjustment. Because the government does not object to the District's method of calculating the COLA adjustment, the court will accept the District's calculations as set forth in Exhibit B to the Supplemental Shenker Affidavit. Accordingly, the District shall be entitled to three-sevenths of the total COLA-adjusted attorneys' fees properly allocated to work on the litigation.

### 4. *Attorneys' chargeable time.*

The government raises the issue of attorneys' chargeable time in its responsive brief, arguing that the District should not recover attorneys' fees for hours billed prior to the filing of the complaint, or for work related to communications with legislators and the media regarding this case. Def.'s Opp'n to Pl.'s EAJA App. at 41–44. EAJA does not permit recovery of attorneys' fees incurred prior to litigation in court in the absence of a "civil action" or "adversary adjudication" within the meaning of 28 U.S.C. § 2412(d)(3). *See, e.g., Levernier Const., Inc. v. United States,* 947 F.2d 497, 500, 502 (Fed.Cir.1991) ("EAJA does not entitle a prevailing party to recovery of fees and expenses incurred during prosecution of [a] claim before the contracting officer.... [A]t its earliest, EAJA coverage may begin after the decision of and in pursuit of an appeal from the decision of a contracting officer.") (citation omitted); *see also Ardesta-*

*ni v. Immigration & Naturalization Serv.,* 502 U.S. 129, 139, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991) (holding that a plaintiff could not recover for fees incurred during deportation proceedings because those proceedings do not qualify as "adversary adjudications"). Accordingly, the District cannot recover attorneys' fees for work related to negotiations with the Bureau and the Bonneville Power Administration ("BPA") which occurred prior to the time counsel began preparing the complaint in this case. The invoices provided by the District indicate that beginning on July 2, 2004, the District began work to prepare a complaint pursuing a breach of contract claim against the government. *See* Shenker Aff. Ex. A at 40 (stating Robert Bonaparte performed "[l]egal research" regarding a "contract claim"). The invoice entry "work on complaint" followed on July 23, 2004. *Id.* at 41 (Arden Shenker was the attorney who performed this work as evidenced by his initials for the entry). Although the District most likely would have performed factual research necessary to support a complaint prior to July 2, 2004, the court is unable to determine with any reasonable degree of certainty the hours representing that work, and therefore plaintiff may not recover attorneys' fees incurred prior to July 2, 2004.

■ Fees associated with correspondence with legislators and the media regarding the case are also not recoverable. *See Hillensbeck,* 74 Fed.Cl. at 482 (holding plaintiff not entitled to fees incurred lobbying Congress); *Role Models Am., Inc. v. Brownlee,* 353 F.3d 962, 973 (D.C.Cir.2004) (concluding "the government cannot be charged for time spent in discussions with the press"). The government objects to $1,584.00 in fees for correspondence and other work related to communications with members of Congress. Def.'s Opp'n to Pl.'s EAJA App. at 43 (citing Shenker Aff. Ex. A at 17, 19, 21–24). Although the government is correct that these fees are not recoverable, the objectionable

charges occurred prior to July 2, 2004, and thus have already been eliminated from consideration in light of the court's prior discussion. Communications with the press occurred later, indeed after a final judgment was rendered. The government objects to fees incurred for a "memo to reporter" and "[t]elephone call from reporter" on August 24, 2009 and August 31, 2009, respectively. *Id.* at 44 (citing Shenker Aff. Ex. A at 252–53). Time spent on these tasks should not be charged to the government. Accordingly, the court deems it appropriate to deduct one hour of attorney time from the District's recoverable attorneys' fees to account for time spent communicating with the press.

■ The court also deducts from the District's award of attorneys' fees John Cameron's fee of $930 for an affidavit in support of the District's request for an enhanced award of attorneys' fees, *i.e.,* an award in excess of EAJA's statutory cap. *See* Supp. Shenker Aff. at 1; *id.* Ex. A at 12 (invoice for services performed by John Cameron).[9] Also excluded from the District's recovery are fees for time spent by the District's attorneys related to the preparation of the Cameron affidavit. A review of the invoices provided by the District indicates that fourteen hours were spent on work related to the Cameron affidavit and the associated enhanced-fee issue. Accordingly, a total of $3,349.90, comprised of $930.00 charged to the District for the Cameron affidavit, and $2,419.90 for the fourteen hours of attorney time spent at a COLA-adjusted rate of $172.85 per hour, shall be elided from the District's otherwise allowable attorneys' fees.[10]

### 5. *Legal research expenses.*

■ The government also questions the District's claimed expenses for legal research, listed on EAJA Form 5 as totaling $17,674.63. *See* Pl.'s EAJA App. (EAJA Form 5 attached).[11] The government argues

---

9. Mr. Cameron's affidavit is appended to the Shenker Affidavit as Exhibit B.

10. In circumstances where time spent on the Cameron affidavit and enhanced-fee issue was not itemized separately from time spent on other tasks related to the case, the court exercised reasonable judgment as to the proportion of the

billed time related to those matters versus time spent on recoverable aspects of case preparation.

11. The government suggests that the District mistakenly included the $17,674.63 figure in its EAJA application because the District claims the same amount for transcription costs in its Bill of Costs. Def.'s Opp'n to Pl.'s EAJA App. at 50 n. 1.

that the District should not recover legal research expenses related to arguments on which it was unsuccessful at trial. As discussed *supra*, the District achieved partial success in this litigation entitling it to attorneys' fees in an amount proportional to the issues on which it prevailed, an amount the court determined to be three-sevenths of the total COLA-adjusted attorneys' fees properly allocated to work on the litigation. That same proportion shall be applied to legal research expenses. Based upon a detailed review of the invoices provided by the District, the court has determined that since July 2, 2004, the District has paid $7,417.58 to Shenker & Bonaparte to reimburse it for legal research expenses incurred during the course of this litigation. *See* Shenker Aff. Ex. A at 44, 46, 66, 97, 103, 108, 113, 115, 126, 130, 144, 153, 157, 163, 166, 169, 181, 186, 191; Supp. Shenker Aff. Ex. A at 3, 11. The District shall be entitled to three-sevenths of these expenses, or $3,178.96.

6. *Synopsis.*

The District's allowable attorneys' fees thus total $136,691.46, comprised of (1) $133,512.50 in attorneys' fees, representing three-sevenths of the District's COLA-adjusted attorneys' fees incurred on and after July 2, 2004, after eliminating fees for time associated with media-related communications and work on the enhanced-fee issue,[12] plus (2) $3,178.96 representing three-sevenths of the District's expenses for legal research performed on and after July 2, 2004.

C. *Paralegal Fees*

The District seeks $30,706.75 in paralegal fees, Pl.'s EAJA App. (Form 5 attached),[13] which the government opposes, arguing that

the District has failed to identify or itemize the paralegal work for which it seeks fees, as required by EAJA. Def.'s Opp'n to Pl.'s EAJA App. at 45. Alternatively, the government argues that the District should not recover the full amount of paralegal fees claimed because the billing rate for the paralegal services exceeded the prevailing market rate. *Id.* at 45–46. The government also requests that the court deduct from any award of paralegal fees "an appropriate amount to account for clerical work performed," which it contends should not be billed at a paralegal rate. *Id.* at 46.

In the Second Shenker Affidavit submitted with the District's Supplemental EAJA Application, Mr. Shenker states, "I have been called upon to testify as an expert witness on numerous occasions ... in support of or in opposition to applications for attorneys' fees and expenses.... In particular, I am familiar with the reasonable charges for paralegal expenses in this community. The most relevant, timely data for such charges is as at December 31, 2008, at which time the mean charge for paralegals was $136.05 per hour, and the median charge was $135 per hour." Second Shenker Aff. ¶ 16; *see also* Pl.'s Reply to Def.'s Opp'n to Pl.'s EAJA App. at 16–17. The government responds that "[t]he District cannot support its demand for paralegal fees at the requested rate solely with testimony of its own counsel, as the Federal Circuit has rejected similar reliance upon attorney argument as evidence." Def.'s Sur-Reply to Pl.'s Reply in Support of its Mot. for Attorney Fees and Expenses and Response to Pl.'s Mot. for Supp. Fees and Other Expenses at 38 (citing *Laitram Corp. v. Cambridge Wire Cloth Co.*, 919 F.2d 1579,

The court concurs in this assessment and has undertaken its own analysis based on invoices as described *infra*.

12. Attorneys' fees were calculated as three-sevenths of $291,766.66, representing $309,152.91 in gross attorneys' fees for time at the COLA-adjusted rate, *see* Supp. Shenker Aff. Ex. B, less $13,863.50 in attorneys' fees incurred prior to July 2, 2004, less $172.85 for time related to communications with media and $3,349.90 for time incurred working on the enhanced-fee issue. The court added to this figure $8,469.65, representing 49 hours of attorney time at a COLA-

adjusted rate of $172.85 per hour expended in addressing the government's later arguments regarding the District's EAJA Application. *See* Shenker Aff. at ¶ 7; Pl.'s EAJA Rebuttal to Def.'s Sur-Reply.

13. Although the invoices submitted by the District in support of its supplemental EAJA application reflect paralegal work performed in the time since the filing of plaintiff's original EAJA application, the District does not separately claim any paralegal fees for this time period. *See* Pl.'s Supp. EAJA App. (Form 5 attached).

1580–81, 1583 (Fed.Cir.1990), *superseded by statute in other respects as recognized by Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d at 1246 (Fed.Cir.2000)).

As a preliminary matter, the court finds that the District has sufficiently documented the paralegal work for which it seeks fees by providing detailed invoices with its original and supplemental EAJA applications. With regard to entitlement, the Supreme Court recently held that "a prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the [g]overnment at prevailing market rates." *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 128 S.Ct. 2007, 2019, 170 L.Ed.2d 960 (2008). Accordingly, the District is entitled to an award of paralegal fees in an amount proportional to its partial success in this litigation.

In determining prevailing market rates the court considers that Mr. Shenker's second affidavit constitutes evidence rather than argument, contrary to the government's contention. Nonetheless, the weight of that evidence is weakened by Mr. Shenker's failure to provide details of his calculation of median and mean paralegal rates in the Portland area. A comparative check on Mr. Shenker's averments is found in a decision of the United States District Court for the District of Oregon decided the day the original complaint in this case was filed, August 18, 2004. In that decision, the court found that the then-prevailing market rate for work performed by a non-licensed attorney was $70 per hour. *See* Def.'s Sur–Reply to Pl.'s Reply in Support of its EAJA App. at 38 (citing *Hells Canyon Pres. Council v. United States Forest Serv.*, No. CV–00–755–HU, 2004 WL 1853134, at *11 (D.Or. Aug.18, 2004)). Using Carol Opatrny's COLA calculations for attorneys' fees, *see* Supp. Shenker Aff. Ex. B, the court applies a COLA adjustment to the then-prevailing market rate of $70 per hour to arrive at a COLA-adjusted average rate for paralegal services of $90 per hour over the period in which this case was litigated.

Turning to the government's specific objections, the court finds that the paralegal time billed for an "[e]xploratory trip to [the] courthouse," Shenker Aff. Ex. A at 181, is in fact recoverable because the District avers that this trip was "to review other cases there, companion or relevant to ours." Pl.'s Reply to Def.'s Opp'n to Pl.'s EAJA App. at 17. However, time billed by paralegal Gabrielle Guz for "[e]lectronically fil[ing][the] pleading," Shenker Aff. Ex. A at 201, is not recoverable because the filing of pleadings is considered clerical work. *Role Models*, 353 F.3d at 973.

Accordingly, the District shall be entitled to an award of paralegal fees for three-sevenths of the 292.5 hours of paralegal time billed since July 2, 2004, at the average COLA-adjusted prevailing market rate of $90 per hour. The District also is awarded 22 hours of paralegal time at $90 per hour, which time was spent addressing the government's later arguments regarding the EAJA application. *See* Shenker Aff. at ¶ 7; Pl.'s EAJA Rebuttal to Def.'s Sur–Reply at 8. Thus, the District is awarded a total of $13,262.14 in paralegal fees.

### D. *Expert Witness Fees*

The District seeks a total of $111,991.68 in expert witness fees for work performed by its testifying expert, Carol Opatrny, at a rate which varied between $170.00 and $190.00 per hour. Pl.'s EAJA App.; Pl.'s Supp. EAJA App. The government argues that the court should entirely reject the District's claimed expert witness fees because the work performed by Ms. Opatrny was not "necessary for the preparation of the District's case." Def.'s Opp'n to Pl.'s EAJA App. at 39 (internal quotations omitted). Alternatively, the government requests that the court substantially reduce any award of expert's fees "to account for the [District's] limited success [in the litigation] attributable to the expert reports and testimony," *id.* at 34, and further reduce any award by deducting Ms. Opatrny's claimed travel expenses from the District's requested fees. *Id.* at 40. The government also contests the $170.00 and $190.00 rates based on the mandate of 28 U.S.C. § 2412(d)(2)(A)(i) that "no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States." *Id.*

■ The District's expert offered analysis of the several elements of the District's claim, and the District's partial success should be taken into account in an award of expert witness fees. As a result, in the circumstances, the court will apply the same three-sevenths proportion to the allowed expert witness fees that it allowed respecting attorneys' fees, legal research fees, and paralegal fees. *See Baldi Bros. Constructors v. United States,* 52 Fed.Cl. 78, 86 (2002) (concluding that *Hensley* requires that attorneys' and experts' fees be awarded with reference to plaintiff's actual success). In addition to reducing the District's award of expert's fees to account for the District's partial success in this litigation, the court also deducts from the expert's fees Ms. Opatrny's expenses for travel unrelated to her attendance at trial or at depositions. As the government suggests, "[t]he majority of Ms. Opatrny's travel expenses are unrelated to her appearance at trial or at depositions," and are not recoverable. Def.'s Opp'n to Pl.'s EAJA App. at 40. However, Ms. Opatrny's expenses related to travel to and from trial, *see* Shenker Aff. Ex. F at 28–29, 37–38 (invoices for Carol Opatrny's consulting services and expenses), closing argument, *see* Supp. Shenker Aff. Ex. D at 5 (invoices for Carol Opatrny's consulting services and expenses), and the deposition of the government's expert as well as her own deposition, *see* Shenker Aff. Ex. F at 21, are recoverable. The court finds that the time sheets the District received from Ms. Opatrny and submitted to the court, which list the date the expense was incurred, the client name, a description of the expense, and the amount, constitute sufficient documentation of the District's recoverable travel expenses for its expert.

■ With regard to rate of compensation to be used in this case, the highest rate of compensation charged by the government's expert, William David Eberle, was $225.00 per hour for his appearances at depositions and trials. Def.'s Opp'n to Pl.'s EAJA App. at 40. However, Mr. Eberle charged only $150.00 per hour for analysis and work related to his expert reports, and the government

argues that the court, "therefore, [should] reduce Ms. Opatrny's fees for work on analysis and her expert reports from $170.00 and $190.00 to $150.00." *Id.*[14] The District does not respond to this argument in its reply brief. Nonetheless, the plain language of 28 U.S.C. § 2412(d)(2)(A)(i) imposes a uniform ceiling of the highest rate of compensation for expert witnesses paid by the government. *See ACE Constructors,* 81 Fed.Cl. at 171–72. Because Ms. Opatrny was never compensated at a rate which exceeded the maximum rate of compensation paid by the government to its expert Mr. Eberle, which was $225.00 per hour, the District may recover expert witness fees at the rates charged by Ms. Opatrny.

Accordingly, the District shall be awarded $45,650.88 for expert witness fees, comprised of three-sevenths of Ms. Opatrny's fees incurred since July 2, 2004, plus expenses related to travel to and from a trial or deposition.

### E. *Witness Fees*

Prevailing parties may recover witness fees pursuant to 28 U.S.C. § 1920(3). In that respect, 28 U.S.C. § 1821(b) provides that "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance." Witnesses who travel by privately owned vehicle are also allowed "[a] travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed, pursuant to section 5704 of title 5, for official travel of employees of the Federal Government." 28 U.S.C. § 1821(c)(2). The District sought $442.45 in fees for witnesses, comprised of $360 for attendance fees paid to eight witnesses employed by the government and one private witness who testified at the liability trial, and $82.45 for a mileage allowance paid to the private witness. *See* Pl.'s Bill of Costs Attach. at 26. The government argues that the court should exclude these fees because "the District fails to explain why these costs were necessary," and that, even if shown to be necessary, "[t]he District has failed to demonstrate that its counsel actually paid $40.00 each in witness fees for these

---

14. Notably, the government does not cite any precedent or textual analysis of the statute to support its position, nor does the government return to this issue in its sur-reply brief.

witnesses." Def.'s Objections to Pl.'s Bill of Costs at 23–24.

■ The District may not recover statutory witness fees for the eight government witnesses who testified at the liability trial because those fees apparently were not in fact paid to those witnesses. However, the District may recover a statutory witness fee and mileage allowance for the private witness. His appearance at the liability trial was vital to the District's case, and the court has not been given any reason to doubt that he was paid the statutory fee and allowable expenses for his time and travel. Accordingly, the District is allowed $122.45 in witness fees, comprised of a $40 witness fee and an $82.45 mileage allowance (170 miles at a rate of 48.5 cents per mile).

### F. *Attorneys' Travel Expenses*

Plaintiff seeks $1,838.91 in attorneys' travel expenses for depositions, comprised of $455.99 for airfare to Washington, D.C. from Portland, Oregon on June 30, 2005, $308.58 for lodging in Washington, $164.40 for airfare to Boise, Idaho, from Portland on June 1, 2005, $235.40 for a second trip to Boise on June 14, 2005, and a total of $674.54 for lodging in Boise from June 7 to June 9, 2005 and from June 14 to June 16, 2005. Pl.'s Bill of Costs Attach. at 27–30. The government resists the District's claimed attorney's travel expenses, arguing that "travel expenses of [the District's] counsel are not taxable pursuant to 28 U.S.C. § 1920 as they are simply not among the enumerated taxable costs." Def.'s Sur–Reply to Pl.'s Reply in Support of its Bill of Costs at 15; Def.'s Objections to Pl.'s Bill of Costs at 24.

■ The government is correct that 28 U.S.C. § 1920 does not allow for taxation of counsel's travel expenses. However, travel expenses are recoverable pursuant to EAJA provided the court is furnished with sufficient documentation of these expenses and the statutory criteria have been satisfied. *See Aston v. Sec'y of Health and Human Servs.,* 808 F.2d 9, 12 (2d Cir.1986); *Jean v. Nelson,* 863 F.2d 759, 778 (11th Cir.1988); *Cf. ACE Constructors,* 81 Fed.Cl. at 172 & n. 14 (holding plaintiff was not entitled to claimed attorneys' travel expenses for which

it failed to submit vendor invoices). The court finds that the American Express statements submitted by the District constitute sufficient documentation of the claimed attorney travel expenses. Further, these expenses manifestly were reasonable and necessary for the effective prosecution of the District's case. Indeed, as the District asserts in its reply brief, "it plainly makes sense for the United States to allow travel expenses [as] it would be more expensive to ship the Commissioner of the Bureau of Reclamation to Portland, and to bring twenty deponents, from Boise, Idaho, to Portland." Pl.'s Reply to Def.'s Cost Bill Objections at 5. Accordingly, the District shall be entitled to $1,838.91 in attorney travel expenses.

## II. COSTS

■ Rule 54 of the Rules of the Court of Federal Claims ("RCFC") provides in part that "[c]osts—other than attorney's fees—should be allowed to the prevailing party to the extent permitted by law." RCFC 54(d)(1). As to law, RCFC 54(d)(1) cites EAJA, 28 U.S.C. § 2412(a), which in turn refers expressly to 28 U.S.C. § 1920. The prevailing party has the obligation to provide documentation of the costs it requests to be awarded. *See Asphalt Supply & Serv., Inc. v. United States,* 75 Fed.Cl. 598, 602 (2007) (citing *Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth.,* 193 F.R.D. 26, 35 (D.P.R. 2000), *aff'd,* 295 F.3d 108 (1st Cir.2002)). The District filed its initial Bill of Costs on October 21, 2009, and it subsequently provided a supplement on December 7, 2009 with costs related to a previously "overlooked" video deposition taken of John W. Keys, who served as Regional Director for the Bureau of Reclamation in Boise, Idaho during the relevant period, and who later became the Commissioner of the Bureau. Pl.'s Reply to Def.'s Cost Bill Objections at 1–2. The government argues that the court should decline to award the District any costs in this case because the District failed to include a "memorandum setting forth the grounds and authorities supporting [all] costs," as required by RCFC 54(d)(1)(B), or provide an explanation "as to the necessity of its expenses." Def.'s Objections to Pl.'s Bill of Costs at 2–3.

In the alternative, the government argues that certain of the District's claimed costs "are not permitted by 28 U.S.C. § 1920, or are otherwise unsupported by the evidence presented in the District's Bill of Costs." *Id.* at 7.

As a general matter, the court finds that the invoices provided by the District constitute sufficient documentation for the costs it requests to be awarded. *See* Pl.'s Bill of Costs Attach. And, although the District did not submit an explanatory memorandum with its Bill of Costs, the District addressed the necessity and reasonableness of its claimed costs in its contemporaneously filed EAJA application and in other filings with the court. *See, e.g.,* Pl.'s Mem. Supporting Fee Requests; Pl.'s Reply to Def.'s Cost Bill Objections. Indeed, most of the District's claimed costs "are largely self-explanatory and plainly within the categories described in RCFC Form 4." *First Fed. Sav. & Loan Ass'n of Rochester v. United States,* 88 Fed. Cl. 572, 598 (2009). Accordingly, the court will address each of the District's claimed costs for compliance with the pertinent statutory criteria for an award.

### A. *Clerk's Fees*

EAJA explicitly allows a judgment for costs "as enumerated in [S]ection 1920 of this title." 28 U.S.C. § 2412(a)(1). Under 28 U.S.C. § 1920(1), a judge or clerk of any court of the United States is allowed to tax as costs the "[f]ees of the clerk and marshal." The amount charged as a filing fee in this court is governed by 28 U.S.C. § 1926, which provides that the fees are to be prescribed by the Judicial Conference of the United States. At the time the District filed its original complaint in the United States District Court for the District of Oregon, filing fees were set at $150.

The District sought $175 in clerk's fees, which included a $150 filing fee plus a $25 fee for service of the complaint on the United States District Attorney for the District of Oregon. Pl.'s Bill of Costs; *id.* Attach. at 1. The government objects to the cost for service of the complaint because it claims that "expenses for service of documents are not among the enumerated costs allowed in 28 U.S.C. § 1920." Def.'s Objec-

tions to Pl.'s Bill of Costs at 7 (citing *United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.,* 95 F.3d 153, 172 (2d Cir.1996)). Although some courts have awarded process server fees pursuant to 28 U.S.C. § 1920(1), *see, e.g., Alflex Corp. v. Underwriters Labs., Inc.,* 914 F.2d 175, 177–78 (9th Cir.1990) (*per curiam*); *Tang How v. Edward J. Gerrits, Inc.,* 756 F.Supp. 1540, 1545 (S.D.Fla.1991), *aff'd,* 961 F.2d 174 (11th Cir.1992), others have held that the plain language of the statute does not authorize the shifting of private process server fees. *See, e.g., Crues v. KFC Corp.,* 768 F.2d 230, 234 (8th Cir.1985); *see also Evergreen Pipeline Const. Co.,* 95 F.3d at 172. Section 1920 contains no provision for the award of private process server fees. Accordingly, as EAJA allows a judgment only for those costs "enumerated in [S]ection 1920 of this title," the District is awarded $150 as the cost of the filing fee paid on August 18, 2004.

### B. *Transcript Costs*

The District claims that it incurred $17,674.63 in transcript costs. Pl.'s Bill of Costs Attach. at 2. The government objects to an award of such costs, arguing that the District "fail[ed] to establish why *any* copy ... of the transcripts were necessarily obtained for use in the case," as required by 28 U.S.C. § 1920(2). Def.'s Objections to Pl.'s Bill of Costs at 8. In the alternative, the government argues that the District should not be compensated for costs for condensed versions of transcripts, electronic versions on ASCII disks, and expedited delivery of transcripts. *Id.* at 9–10.

The government's overarching objection is that "[t]he only justification that the District provides for its claim [for transcript costs] ... is the [plain] statement that all costs 'were necessarily incurred in this action' and that the services were 'necessarily performed;'" "this conclusory pronouncement is insufficient, as a matter of law, to support the District's claim." Def.'s Objections to Pl.'s Bill of Costs at 8. "The court has discretion to tax the cost of transcripts of court proceedings when: (1) the transcripts

are necessarily obtained for use in the case and (2) the cost is reasonable." *See Asphalt Supply*, 75 Fed.Cl. at 602–03 (citing 28 U.S.C. § 1920(2)); *see also Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 233–34, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964); *United States Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1245 (10th Cir.1988); *Syntex Ophthalmics, Inc. v. Novicky*, 795 F.2d 983, 986 (Fed.Cir.1986) (citing *Chore–Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 781–82 (Fed.Cir.1983)).

### 1. *Trial transcripts.*

■ The court finds that the District's costs for trial transcripts were reasonably and necessarily incurred and are fully recoverable. *See Baker v. John Morrell & Co.*, 263 F.Supp.2d 1161, 1207–08 (N.D.Iowa 2003), *aff'd*, 382 F.3d 816 (8th Cir.2004) (holding plaintiff entitled to recover cost of trial transcript given the length of the trial and the complexity and large number of issues argued and raised by the defendant); *ACE Constructors*, 81 Fed.Cl. at 170 (same). For both the liability and damages phases of the case, the court called upon the parties to provide post-trial briefing and closing arguments. Transcripts of the trials manifestly were necessary for the post-trial briefs and arguments. The liability phase of trial was held from November 13 through 16, 2007, and closing arguments were given on April 16, 2008. The trial of damages was held on April 22 and 23, 2009, and closing arguments were made on July 27, 2009. The District claims $4,918.12 in transcript costs related to the liability phase of trial, comprised of $4,379.12 for trial transcripts, $96.80 for a cumulative index of the trial transcripts, and $442.20 for a transcript of closing arguments.

Pl.'s Bill of Costs Attach. at 6, 7, 9. The District claims $3,452.5 in transcript costs for the damages trial, made up of $2,908.50 for the trial transcripts themselves, and $544 for a transcript of the closing arguments. *Id.* at 12–13. Included in these totals, however, are amounts charged to the District for condensed versions of the transcripts, CD–ROMs, courier pickup, delivery by Federal Express or by E-mail, expedited processing, and a "handling and delivery fee." *See, e.g., id.* at 6, 7, 12, 13.

The expense of additional copies of transcripts in electronic or condensed format or of premium delivery must be justified on grounds of necessity; if incurred for the convenience of counsel, such costs are not taxable. *See Asphalt Supply*, 75 Fed.Cl. at 602–03. The court finds that costs attributable to condensed copies of the trial transcripts and to the cumulative index are taxable, as these additional versions were not simply prepared for the attorneys' convenience but rather were reasonable and necessary for timely and efficient post-trial briefing in this multi-phase case. *See ACE Constructors*, 81 Fed.Cl. at 170–71. However, the charges for CD–ROMs, courier pickup, premium delivery, and expedited processing have not been shown to be necessary for the effective prosecution of the District's case and are not taxable. Charges for "handling and delivery" also are not taxable; the District has failed to define these charges or otherwise explain why they were necessary for the preparation of the District's case. Accordingly, the District is allowed a total of $6,501.01 for trial transcripts.[15]

---

**15.** The per-page rates charged by the reporting company for the transcripts of the damages trial were $8.25 and $9.35 for the transcripts themselves and $2.75 for the condensed version, whereas the per-page rates charged for the other transcripts for which the District has provided invoices varied between $4.30 and $4.50 for the transcripts themselves and $.83 for the condensed versions. *Compare* Pl.'s Bill of Costs Attach. at 12, 13, *with id.* at 3, 6, 7. Defendant avers that expedited processing accounts for the price differential. Def.'s Objections to Pl.'s Bill of Costs at 10. The higher per-page prices for the damages trial transcripts may also include

fees for MSWord CDs, which are not listed separately on the invoices. Pl.'s Bill of Costs Attach. at 12, 13. In accord with the government's assertion that $4.80 was the base rate per page if the transcripts had been ordered prior to the commencement of the damages trial, *see* Def.'s Objections to Pl.'s Bill of Costs at 10, the court will allow the District to recover $4.80 per page for the transcripts of the damages trial and closing arguments and $.83 per page for the condensed version of the damages trial transcript. These adjustments have already been factored into the amount the District is allowed to recover for the trial transcripts.

## 2. *Hearing transcripts.*

██ The District claims $1,747.29 in transcript costs related to hearings and other proceedings before the court, consisting of $287.50 for a motion hearing on May 15, 2006, $70 for a status conference held on February 27, 2007, $285.50 for a status conference held on September 25, 2007, $399.64 for a pre-trial conference held on November 6, 2007, $190.90 for a status conference held on September 26, 2008, and $513.75 for a pre-trial conference held on April 3, 2009. Pl.'s Bill of Costs Attach. at 3–5, 8, 10–11. Included in these costs are expenses attributable special processing, extra copies, and "handling and delivery." Because substantive and procedural matters were addressed at each of these proceedings in this unique case, the costs of the transcripts themselves are taxable, as are the costs associated with any condensed versions produced. However, as discussed *supra*, expenses above and beyond the costs of the transcripts themselves and the condensed versions are not taxable.[16] Accordingly, the District is allowed a total of $1,171.18 for transcripts of the hearings and other proceedings before the court.

## 3. *Deposition transcripts.*

██ The District has submitted invoices for depositions taken in this case totaling $8,400.68. *See* Pl.'s Bill of Costs Attach. at 14–25; Pl.'s Supp. Bill of Costs Attach. However, this total includes not only the cost of the deposition transcripts themselves, but also charges for expedited processing, extra copies (*i.e.*, photocopies, ASCII diskette(s), binders, notebooks, exhibits), delivery, archiving, postage and handling, and reporter appearance fees.[17] The District's supplemental bill of cost for a video deposition taken of John Keys, Regional Director for the Bureau of Reclamation during the relevant period, also includes a reading and signing fee and video charges. Pl.'s Supp. Bill of Cost Attach. Deposition transcript costs will be allowed in this case. As the District points out in its reply brief, substantial portions of four of the depositions taken by the District were read into the record at trial. Pl.'s Reply to Def.'s Cost Bill Objections at 2. Also, in other respects, the depositions were necessary to explain the charges made by the Bureau to the District because the contemporaneous documentary records of the Bureau, BPA, and the Corps of Engineers, each of which had a role in establishing elements of the rate for reserved power ultimately charged by the Bureau to the District, were not self explanatory. Indeed, the District asserts that "ten other witnesses, all adverse, working for the Bureau of Reclamation, Bonneville Power Administration [,] and the Corps of Engineers, necessarily were examined on the basis of earl[ier] deposition testimony." *Id.* However, with the exception of the reading and signing fee and video charges for the deposition taken of John Keys, the District has failed to show that expenses above and beyond the costs of the deposition transcripts themselves were reasonably and necessarily incurred in this case. Given John Keys' potential importance as a witness in this case and the likelihood that he would be unavailable to testify at trial because of his governmental position, it was reasonable and necessary in the circumstances for the District to incur the cost of a video deposition for that witness. Accordingly, the District shall be allowed a total of $6,142.71 in deposition transcript costs, including $25.00 for the reading and signing fee and $417.50 in video charges stemming from the video deposition of John Keys.[18]

16. The allowable cost for each hearing or conference transcript shall not exceed the number of transcript pages multiplied by a maximum base rate of $6.45 per page. This rate represents the per-page cost when the transcript is ordered after, as opposed to before, the commencement of the proceeding. *See* Def.'s Objections to Pl.'s Bill of Costs at 10. For those proceedings where the rate charged per page exceeded $6.45, either because expedited processing was requested, or because the rate included CD–ROMs, *see* Pl.'s Bill of Costs Attach. at 10–11, a per-page rate of $6.45 for the transcripts themselves and of $.83 per page for the condensed versions was used to compute the District's taxable transcript costs.

17. One invoice also includes a charge for "TRANSERV," *see* Pl.'s Bill of Costs Attach. at 14, which the District does not explain. This charge will not be allowed.

18. Expedited charges were applied to the transcript of the deposition of Darryl Beckmann, taken June 1, 2005. *See* Pl.'s Bill of Costs Attach. at 15. The per-page rate for the expedited

#### 4. *Synopsis.*

The District's allowable costs for transcripts thus total $13,814.90, comprised of $6,501.01 for trial transcripts, $1,171.18 for transcripts of hearings and other proceedings before the court, and $6,142.71 for deposition transcripts.

### CONCLUSION

For the reasons set forth, the District's application for attorneys' fees and expenses under EAJA is GRANTED IN PART. The District also is awarded a portion of the Bill of Costs it submitted in accord with this court's earlier judgment entered in the case. The District is awarded attorneys' fees of $136,691.46 and costs and expenses totaling $74,839.28, consisting of $13,262.14 in paralegal fees, $122.45 for witness fees and expenses, $45,650.88 in expert witness fees, $1,838.91 in attorney's travel expenses, $150 in clerk's fees, and $13,814.90 in transcript costs. Accordingly, the clerk shall enter judgment for the District in the total amount of $211,530.74.

It is so ORDERED.

---

transcript was $7.50 ($337.50 divided by 45 pages), whereas the per-page rate charged by the same reporter one day later was $3.75. *See id.* at 16. For purposes of computing allowable costs, the court used a per-page rate of $3.75 for the deposition of Mr. Beckmann taken June 1, 2005 as the need for expedited processing of this transcript has not been established.

The invoice for the depositions taken of Terry Ford and Ryan Patterson, *see* Pl.'s Bill of Costs Attach. at 20, were not itemized. The government argues that failure to itemize should prevent the District from recovering any costs from these depositions, or, in the alternative, recovery should be reduced to reflect non-taxable costs which were included in the amounts charged to the District. *See* Def.'s Objections to Pl.'s Bill of Costs at 19–20. The government asserts that Ryan Patterson's deposition was 88 pages long, making the rate per page $5.48, whereas the rate per page charged for Terrald E. Kent's deposition by the same reporting company approximately one week later was $4.30. *See id.;* Pl.'s Bill of Costs Attach. at 21. Absent any explanation by the District, the court assumes this difference is due to the inclusion of non-taxable costs such as a reporter attendance fee. Therefore, in computing deposition transcript costs, the court has applied a rate of $4.30 per page to the Patterson deposition and proportionally reduced the amount charged for the Ford deposition.